RECEIVED

JUL 29 2013

U.S. DISTRICT COURT
MINNEAPOLIS, MINNESOTA

## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| AF HOLDINGS LLC, | CASE Nos. 12-cv-1445 (JNE/FLN) |
| | 12-cv-1446 (JNE/FLN) |
| Plaintiff, | 12-cv-1447 (JNE/FLN) |
| | 12-cv-1448 (JNE/FLN) |
| v. | 12-cv-1449 (JNE/FLN) |
| JOHN DOE, | Judge: Hon. Joan N. Ericksen |
| Defendant. | Magistrate Judge: Hon. Franklin L. Noel |

## OBJECTIONS OF PAUL A. DUFFY TO THE MAGISTRATE JUDGE'S JULY 15, 2013, ORDERS TO APPEAR AND MEMORANDUM OF LAW IN SUPPORT THEREOF

Paul A. Duffy ("Movant"), the sole principle of Prenda Law, Inc., hereby objects to the Magistrate Judge's July 15, 2013, orders to appear and submits this Memorandum of Law in support of his objections.[1]

### I.    Introduction

On June 20, 2013, the Magistrate Judge issued a set of orders to initiate an investigation into fraud on the court. (*See, e.g.,* ECF No. 13 for 12-CV-1449, hereinafter collectively the "June 20 Orders")  The June 20 Orders discussed two possible legal grounds—Federal Rules of Civil Procedure 11 and 60—for the Magistrate Judge's jurisdiction, but did not expressly reopen the cases under either Rule.  (*Id.*)  The June 20

---

[1] The orders to appear were entered in cases: 12-CV-1445 (JNE/FLN); 12-CV-1446 (JNE/FLN); 12-CV-1447; (JNE/FLN); 12-CV-1448 (JNE/FLN); and 12-CV-1449 (JNE/FLN).

SCANNED

JUL 3 0 2013

U.S. DISTRICT COURT MPLS

Orders instructed Plaintiff's counsel to file a declaration under seal, but were not directed towards Movant. (*Id.* at 8.)

On July 15, 2013, the Magistrate Judge issued a second set of orders scheduling case-management conferences in each of the cases subject to the June 20 Orders. (*See, e.g.,* ECF No. 15 for 12-CV-1445, hereinafter collectively the "July 15 Orders".) The July 15 Orders indicated that the cases were, in fact, reopened and, as is relevant here, ordered an officer of Prenda Law, Inc. ("Prenda") to appear at the case-management conferences. (*Id.*) As the sole officer of Prenda, Movant is the only person who can comply with the July 15 Orders on Prenda's behalf.

Movant respectfully objects to the July 15 Orders for five reasons: (1) irrespective of Alan Cooper's repudiation, at all relevant time Plaintiff has owned the copyrights at issue in the underlying cases; (2) the Magistrate Judge exceeded his statutory authority by reopening the cases; (3) even if the Magistrate Judge was authorized to reopen the cases, the cases were not properly reopened; (4) even if the cases were properly reopened, the Magistrate Judge is without jurisdiction to order Movant to appear; and (5) Alan Cooper's repudiation is not credible.

## II. Background

### A. Facts regarding the underlying cases

Each case subject to the June 20 Orders was filed on June 15, 2012, as an action against an unidentified individual for copyright infringement. (*See, e.g.,* ECF No. 1 for 12-CV-1445.) Shortly after filing the cases, Plaintiff sought the Court's leave to discover the identities of the John Doe defendants. (*See, e.g.,* ECF No. 3 for 12-CV-1445.) Under

2

this District's Local Rules, the matter was automatically delegated to the Magistrate

Judge, who denied Plaintiff's discovery request on the grounds that:

> (1) the requested discovery was not very likely to reveal the identity of the alleged infringer; (2) personal jurisdiction may not exist over the alleged infringer; and (3) the pornographic copyright holder's activities in pursuit of settlement agreements may constitute an 'abuse of the judicial system.

(*See, e.g.,* ECF No. 8 for 12-CV-1445.) Plaintiff objected to the Magistrate Judge's order

and the Court sustained Plaintiff's objections.  (*See, e.g.,* ECF No. 10 for 12-CV-1445.)

In order to address the concern of abusive settlement tactics, the Court ordered Plaintiff's

counsel to file under seal copies of all written and oral communications between AF

Holdings and the John Doe defendants. (*See, e.g., id.*) Plaintiff's counsel complied with

the requirement.

Plaintiff attached a copyright assignment agreement to each of the complaints it

filed. (*See, e.g,* ECF No. 1-1 for 12-CV-1445.) The assignment agreements all listed

Plaintiff as the assignee. (*Id.*) Raymond Rogers signed the assignment on behalf of the

assignors. (*Id.*) Alan Cooper acknowledged the assignment on behalf of Plaintiff.  (*Id.*)

The assignment agreement transferring the work, "Sexual Obsession" was dated June 12,

2011. (*Id.*) The assignment agreement transferring the work, "Popular Demand," was

dated December 20, 2011. (*Id.*)

Plaintiff then issued subscriber identification subpoenas and ascertained the Doe

Defendants' identities.  One complaint was ultimately dismissed without prejudice, three

complaints were dismissed with prejudice, and one complaint was dismissed with

prejudice after the Defendant was named and served with a summons and complaint. All of the dismissals were made pursuant to Fed. R. Civ. P. 41(a).

### B.   Paul Godfread's Letter to the Court

On November 29, 2012, attorney Paul Godfread filed a letter with the Court that expressed concern that his client, Alan Cooper, was wrongly being held out as Plaintiff's CEO. (*See* ECF No. 18 in 12-CV-1449.) Godfread's letter attached twenty-three pages of exhibits, but did not attach an exhibit in which his client was actually identified as AF Holdings' CEO. (*See id.*) Further, his letter failed to disclose that Plaintiff had informed him that it did not consider *any* Alan Cooper—including his client—to be its CEO and had offered to sign a document acknowledging that fact. (*See id.*)

The very next day, Godfread's letter was publicized widely across the Internet as well as in other copyright infringement cases filed by Plaintiff. In Plaintiff's view, Godfread's letter was designed to publicize his copyright defense practice, provide his fellow copyright defense attorneys with fodder to discredit Plaintiff, and create a pretext for securing pre-suit discovery for a lawsuit he was preparing against Mr. Cooper's former-friend, John Steele, who was conspicuously referenced throughout the letter.

Indeed, on January 22, 2013, Godfread served John Steele with a complaint alleging, "that John Steele and the law firm Prenda Law, Inc. falsely used [Alan Cooper's] name as an officer or director of two St. Kitts & Nevis based limited liability companies for the purpose of concealing the their [sic] true owners and to defraud

others." Again, Godfread failed to cite to any specific document in which Mr. Cooper was held out as AF Holdings' officer or director.

Godfread's complaint was hip-pocket served, so it was not on the public record. But shortly thereafter it appeared on Internet blog sites and, on information and belief, was leaked to reporters Dan Browning and Abby Simons of the Minneapolis Star Tribune. For a complaint that purported to defend Cooper's privacy interests, Godfread did far more to thrust his client into the national spotlight than Cooper's now-repudiated involvement with AF Holdings ever did.

### C.   Facts regarding the Order Issuing Sanctions in *Ingenuity13 v. Doe*

On September 27, 2012, a copyright holder Ingenuity13, LLC filed a lawsuit in the U.S. District Court for the Central District of California alleging copyright infringement, contributory infringement and negligence against an unidentified Internet user, John Doe. ECF No. 1 in 12-CV-8333. Shortly thereafter, Ingenuity13 sought (ECF No. 8), and was granted (*Id.* at ECF No. 9), leave to issue a subpoena to John Doe's Internet Service Provider in order to discover John Doe's identity. On December 19, 2012, the case was reassigned to Judge Wright. *Id.* at ECF No. 24.

The next day, the new district court vacated the prior district court's order granting discovery and ordered Ingenuity13 to show cause why it should be allowed to proceed in discovering John Doe's identity. *Id.* at ECF No. 28. The new district court described its "duty to protect the innocent citizens of this district from this sort of legal shakedown, even though a copyright holder's rights may be infringed by a few deviants." *Id.*

On December 31, 2012, Ingenuity13 filed a motion to disqualify the district court, arguing that the district court's comments regarding copyright holder plaintiffs in the instant action and similar actions would give a reasonable observer cause to question the court's impartiality. *Id.* at ECF No. 35. This motion was denied. *Id.* at ECF No. 41. On January 28, 2013, Ingenuity13 voluntarily dismissed the action in its entirety without prejudice pursuant to Fed. R. Civ. Proc. 41(a)(1). *Id.* at ECF No. 43.

On February 7, 2013, the district court ordered Ingenuity13's attorney of record, Brett Gibbs, to show cause why he should not be sanctioned for violations of Fed. R. Civ. Proc. 11 and Central District of California Local Rule 83-3. *Id.* at ECF No. 48. Identical orders were entered in four other copyright infringement actions consolidated before the district court, including infringement actions filed by AF Holdings.  The district court identified three types of sanctionable conduct: (1) violating orders instructing AF Holdings to cease its discovery efforts based on information obtained through any earlier-issued subpoenas; (2) failing to conduct reasonable inquiries before filing John Doe copyright infringement cases and naming Benjamin Wagar and Mayon Denton as defendants; and (3) in *Ingenuity13 LLC v. Doe*, No. 2:12-cv-8333-ODW(JCx) (C.D. Cal. filed Sept. 27, 2012), perpetrating a fraud on the court by misappropriating the identity of Alan Cooper and filing lawsuits based on an invalid assignment agreement.[2] *Id.* at 9–10.

---

[2] Unlike the underlying cases here, there was no assignment agreement attached to the complaint in *Ingenuity13 LLC v. Doe*, No. 2:12-cv-8333-ODW(JCx). In that case, the copyright holder obtained the copyright as a work for hire, not via an assignment. The Alan Cooper repudiation had no relevance to that case, and to this day Plaintiff has no idea why the district court was inquiring about Alan Cooper in that case. That case was the sole Alan Cooper inquiry raised in the district court's order to show cause.

The district court scheduled a March 11, 2013 hearing, and indicated that it would "determine the proper punishment" for Mr. Gibbs, which "may include a monetary fine, incarceration, or other sanctions sufficient to deter future misconduct." *Id.* at 10–11. In addition, "based on the unusual circumstances of [the] case," the district court appointed Morgan Pietz, attorney for the putative John Doe defendant in the underlying action, to the hearing "to present evidence concerning the conduct outlined in [the] order." (*Id.* at 10.) Gibbs filed a brief in response to the order to show cause in which he defended his conduct by, *inter alia*, explaining that he was receiving guidance from "senior members" of Prenda Law, a law firm which he was Of Counsel to in the underlying action.

The Court ordered Gibbs to identify the "senior members" referenced in his brief *Id.* at ECF No. 57, and Gibbs responded by identifying attorney Paul Hansmeier and attorney John Steele. *Id.* at ECF No. 58. On March 5, 2013, the Court ordered Movant (an Illinois attorney), attorney Paul Hansmeier (a Minnesota attorney), Florida resident John Steele, Minnesota paralegal Angela Van Den Hemel, Florida resident Mark Lutz, Alan Cooper of AF Holdings LLC, Minnesota technician Peter Hansmeier, and Alan Cooper of Isle, MN "to appear in Los Angeles, California on March 11, 2013, at 1:30 p.m."—a mere six days after issuance. *Id.* at ECF No. 66. The order did not specify why the individuals were ordered to appear. *See id.*

After becoming aware of the order on March 7, 2013, Movant retained counsel and on the next day filed, in conjunction with others similarly positioned, an *ex parte* motion for the court to withdraw its order to appear. *Id.* at ECF No. 81. Movant objected to, *inter alia*, the court's exercise of nationwide personal jurisdiction and to the

7

"fundamentally unreasonable" notice. *Id.* at ECF No. 82, at 2–3. The district court did not rule on the motion prior to the hearing. Movant appeared through counsel at the March 11, 2013, hearing and made himself available to testify via telephone. *See* Transcript, Mar. 11, 2013 Hearing on Order to Show Cause, at 2, 5:10–7:3.

The district court denied Movant's counsel's attempt to participate in the hearings, instructing her to "have a seat." *Id.* at 7:1–3. Movant's counsel was not allowed to cross-examine witnesses, object to evidence or make arguments at the hearing. *See generally id.* After the hearing, Movant's *ex parte* motion was rejected by the district court, which found there was "specific jurisdiction over these persons because of their pecuniary interest and active, albeit clandestine participation in these cases." *Id.* at ECF No. 86, at 1. The district court further remarked that Movant's "eleventh-hour filing exemplifi[ed] gamesmanship," notwithstanding that it had been filed within 24 hours of notice of the district court's order to appear. *Id.* The district court's unwarranted remarks regarding "gamesmanship" foreshadowed the unfairness of the proceedings to follow.

On March 14, 2013, the district court amended its order to show cause. *Id.* at ECF No. 86, at 2 (amending ECF No. 48). This time, the order included possible sanctions against Movant, non-party John Steele, non-party Paul Hansmeier, non-party paralegal Angela Van Den Hemel, non-party non-attorney Mark Lutz, non-party non-attorney Alan Cooper, non-party technician Peter Hansmeier, non-party Prenda Law, Inc., non-party Livewire Holdings LLC, non-party Steele Hansmeier PLLC (a law firm that was formally dissolved in 2011), consolidated plaintiff AF Holdings LLC, plaintiff Ingenuity13 LLC and non-party 6881 Forensics, LLC. (*Id.*) The district court also amended its order to

8

show cause to identify five additional forms of sanctionable conduct by these thirteen persons and entities: (1) participation, direction and execution of the acts described in the district court's original order to show cause; (2) failing to notify the district court of all parties that have a financial interest in the outcome of the litigation; (3) defrauding the district court by misrepresenting the nature and relationship of the individuals and entities ordered to appear; (4) Steele and Hansmeier's failure to make a *pro hac* appearance before the district court; and (5) for failing to appear in person at the March 11, 2013 order to show cause hearing against Gibbs. *Id.* Up until that time, the only attorney who had done anything in that case on behalf of Plaintiff was Brett Gibbs.

Movant appeared before the district court in Los Angeles at the order to show cause hearing on April 2, 2013. Transcript, Apr. 2, 2013 Hearing on Order to Show Cause, at 4:19–25. There, the district court indicated its desire to receive testimony from Movant, Steele and Hansmeier. *Id.* at 6:19–22. In light of the highly ambiguous nature of the proceedings, the appearance that the district court had prejudged all of the issues raised in its order to show cause and the district court's conduct[3], each of these individuals, on the advice of counsel, invoked their Fifth Amendment privilege against compelled testimony. *Id.* at 7:5–9:20.   After learning of this posture, the district court rebuffed Movant's counsel's attempt to present arguments and abruptly ended the

---

[3] This conduct included accepting unsworn oral testimony from members of the public gallery at the March 11, 2013, hearing, acting with extreme agitation at the hearing and exemplifying a willingness to distort the record via accusations of, *inter alia*, eleventh-hour gamesmanship.

hearing. *See id.* at 10–13. No testimony, evidence, or argument was allowed or presented at the hearing, which lasted an estimated 12 minutes. *See generally id.*

At the April 2, 2013, hearing, the district court stated, "I want to know if some of my conjecture is accurate. The only way I can find out is to have the principles [sic] here and answer those questions. Now, if you say he will not answer those questions, then I will draw whatever inferences I think are reasonable from the facts as I know them." Transcript, Apr. 2, 2013 Hearing on Order to Show Cause, at 8:24–9:4. The district court's statements at the April 2, 2013 Hearing and in the Sanctions Order made clear that the district court made its findings of fact contained therein based on "adverse inferences drawn from Steele, Hansmeier, Duffy, and Van Den Hemel's blanket refusal to testify," not any actual evidence. ECF No. 130, at 3.

Following the hearing, Movant and other targets of the order to show cause submitted substantial briefing on the district court's procedural errors, failure to provide due process, and numerous evidentiary objections. *See* ECF Nos. 108, 109, 110, 113, 120, 122, 123, 125, 126, 127, 128, 129. These issues were never ruled on by the district court.

On May 6, 2013, the district court issued an order sanctioning Movant, Gibbs, Hansmeier, Steele, Prenda Law, AF Holdings and Ingenuity13 with (1) an award of attorneys' fees and costs totaling $40,659.86, which Movant was ordered to pay jointly and severally with the other sanctioned persons and entities; (2) a punitive doubling of the foregoing award of attorneys' fees and costs—bringing the total monetary sanctions to $81,319.72—which Movant was again ordered to pay jointly and severally; (3)

referrals to state and federal bar organizations and disciplinary committees; (4) referral to the United States Attorney for the Central District of California; (5) referral to the Criminal Investigative Division of the Internal Revenue Service; and (6) notification of "all judges before whom these attorneys have pending cases." ECF No. 130, at 10–11. The district court found the fact that it could not make specific findings of fraud against Movant and others to be "unfortunate" and stated that the amount of the sanctions award was calculated to be "just below the cost of an effective appeal."

The salient point about the Order Issuing Sanctions is that the findings of fact contained therein were not based on evidence from the record, but adverse inferences drawn from the district court's conjectures. The Order Issuing Sanctions suggested that drawing negative inferences was appropriate in a civil case, but the sanctions imposed included a punitive doubling of the monetary attorneys' fees award—which, of course, is a criminal sanction that cannot be imposed without appropriate due process protections. *Falstaff Brewing Corp. v. Miller Brewing Co.*, 702 F.2d 770, 778–79 (9th Cir. 1983) (quoting *Penfield Co. of California v. SEC*, 330 U.S. 585, 591 (1947)). The *Ingenuity13* order is currently the subject of eight separate appeals to the Ninth Circuit.

Here, in its June 20, 2013, Orders, the Magistrate Judge referenced Movant's invocation of the Fifth Amendment. The Supreme Court has admonished district courts against drawing negative inferences from litigants' invocation of the privilege. *Griffin v. California*, 380 U.S. 609 (1965). "Too many, even those who should be better advised, view this privilege as a shelter for wrongdoers. They too readily assume that those who invoke it are either guilty of crime or commit perjury in claiming the privilege." *Ullmann*

*v. United States*, 350 U.S. 422, 426 (1956). Rather, "[t]he privilege serves to protect the innocent who otherwise might be ensnared by ambiguous circumstances." *Slochower v. Board of Higher Education*, 350 U.S. 551, 557, 558 (1956); *accord Griffin*, 380 U.S. at 613.

Due to questions regarding the *Ingenuity13* proceedings and the substantial issues being argued on appeal, Movant respectfully submits that the Court should await the Ninth Circuit's ruling before placing reliance on the Order Issuing Sanctions.

**III.    At all Relevant Times, Plaintiff Has Owned the Copyrights at Issue in the Underlying Actions**

The crux of the Magistrate Judge's orders appears to be the concern that Plaintiff did not own copyrights at the time it filed its discovery motions in the underlying cases. Interestingly, though, one thing that Judge Wright did not accuse AF Holdings of—and perhaps the *only* thing he did not accuse AF Holdings of—was not owning a copyright.

The elements of a copyright assignment are: (1) a writing; (2) signed by the assignor. 17 U.S.C. § 204; *see also Taylor Corp. v. Four Seasons Greetings, LLC*, 403 F.3d 958, 963 (8th Cir. 2005) (explaining that copyrights may be transferred from one entity to another when the assignment "is in writing and signed by the *owner* of the rights conveyed or such owner's duly authorized agent.") (emphasis added) (citing 17 U.S.C. § 204(a)); *Thomsen v. Famous Dave's of America, Inc.*, 640 F. Supp. 2d 1072, 1078 (D. Minn. 2009) ("Further, to transfer ownership of a copyright, there must be a writing signed by the owner. The writing need not contain any particular words or phrases; rather

the inquiry is to give effect to the intent of the parties, which must demonstrate a transfer of the copyright."). As a district court in the Northern District of California stated:

> The written copyright assignment recites that it is between the original copyright owner, Heartbreaker Films, and Plaintiff here, AF Holdings, LLC. While the assignment is signed by a representative of the assignors, it is not signed by a representative of the assignee, AF Holdings, LLC. Instead, it is signed by a representative of AF Films, LLC. As the law requires only that the assignment be signed by the assignor and not the assignee . . . this inconsistency does not prevent a prima facie showing of copyright ownership.

*AF Holdings LLC v. Does 1-96*, No. 11-cv-3335-JSC (N.D. Cal. Nov. 22, 2011), ECF No. 29 at 5 n.1 (internal citations omitted). Here, the intent of the parties was to transfer ownership of a copyright. Further, the assignment was in writing and was signed by the assignor. *See* Aff. of Raymond Rogers (affirming his signature on behalf of the assignors), attached hereto as Exhibit E.

At its core, the Alan Cooper repudiation is not a copyright ownership issue, but one of Cooper's privacy interests. Except for Mr. Steele (and his alleged alter egos), Mr. Cooper has never accused the undersigned or anyone else of invading his privacy interest. Just as Cooper lacks standing to argue against AF Holdings' joinder of individuals in a copyright infringement lawsuit, so too do the Doe Defendants lack standing to argue whether Mr. Steele (or anyone else) infringed on Mr. Cooper's privacy interests.

Both of the parties to the assignment agreement agree that the relevant copyrights were transferred to AF Holdings, and that the instrument of conveyance satisfied the formal requirements of transfer, irrespective of Mr. Cooper's privacy claims. This

13

Court's jurisdiction extends to the cases and controversies that are before it (e.g., the copyright infringement of the respective John Does), but no further. Otherwise, this Court would be faced, for example, with the prospect of entertaining complaints from anyone who has ever allegedly been harmed by Plaintiff in any context, worldwide, and throughout time.

## IV.     The Magistrate Judge Exceeded His Authority by Reopening the Cases

A threshold question for the Court is whether an Article I judge possesses the authority and jurisdiction to initiate a supplemental proceeding. *Thomas v. Basham*, 931 F.2d 521, 523 (8th Cir. 1991) ("[E]very federal court has a special obligation to consider its own jurisdiction."). An Article I judge's authority is derived from district court designations. *See* 28 U.S.C. § 636(b). This District's Local Rules establish three categories of designations. *See* LR 72.1. First, a magistrate judge is automatically designated to hear a broad range of pretrial matters, a narrow range of criminal matters and to conduct settlement conferences in civil cases. *See* LR 72.1(a). This category does not cover the Magistrate Judge's June 20 Orders. *See id.*; *see also Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384 (1990) (stating that motions for attorneys' fees are independent and supplemental to the original proceeding). Second, district judges may make one-off designations to a magistrate judge of any matter set forth in 28 U.S.C. § 636(b). *See* LR 72.1(b). No such designation was made here. Finally, with the consent of the parties, a magistrate judge is designated to conduct the proceedings in a civil matter and to order entry of judgment. *See* LR 72.1(c). The parties in this matter have not consented to such a designation. Because the Magistrate Judge was not acting pursuant

14

to a district court designation, he exceeded his authority in initiating a supplemental proceeding.

Questions of authority and jurisdiction are not abstract matters, but raise meaningful due process and separation of powers issues. Here, the Magistrate Judge does not appear to have the authority to initiate supplemental proceedings or to order individuals from around the United States[4] to appear at a case management conference. This is especially true where, as here, the Magistrate Judge's sole basis for ordering Movant's attendance is that Plaintiff directed that settlement proceeds be deposited in its client trust account at Prenda. On these grounds, Plaintiff respectfully asks the Court to vacate the July 15 Orders.

## V.    The Cases Were Not Properly Reopened

Even if the Magistrate Judge possessed the authority to initiate supplemental proceedings, he did not properly do so here. While it is unclear whether the Magistrate Judge is proceeding under Rule 11 or Rule 60, the Magistrate Judge's use of the word "reopened" in his July 15 Orders, and the absence of a show cause order issued under Rule 11, suggests that he has reopened the cases under Rule 60. Out of an abundance of caution, Movant will address both Rule 60 and Rule 11.

### A.    The Cases Were Not Properly Reopened Under Rule 60

Even if the Magistrate Judge possessed the authority to reopen the cases under Rule 60, he failed to follow proper procedures for doing so. Rule 60 states that a district

---

[4] Movant resides in Chicago, Illinois. AF Holdings' principal, Mark Lutz, resides in Miami Beach, Florida.

court may reopen a case on motion and just terms. Fed. R. Civ. P. 60(b). While neither

Plaintiff nor any of the Defendants moved to reopen the cases, the Eighth Circuit has held

that a district court may reopen a case *sua sponte*—provided that parties are afforded the

due process protections of notice and an opportunity to be heard. *See Pierson v.

Dormire*, 484 F.3d 486, 492 (8th Cir. 2007). Neither notice nor an opportunity to be

heard was provided here.

Further, Rule 60 only allows relief from a final judgment, order or proceeding.

Yet, all of the underlying cases were voluntarily dismissed pursuant to Rule 41(a)(1), or

"without a court order." Fed. R. Civ. P. 41(a)(1). The Magistrate Judge noted three

cases—two unreported decisions from the Eighth Circuit and one decision from this

District—all of which held that Rule 60 cannot be used to set aside a Rule 41 dismissal.

The Magistrate Judge disagreed with these holdings, citing to a decision of the Florida

Supreme Court. Yet, the Florida Rules of Civil Procedure are structured differently than

the Federal Rules of Civil Procedure. For example, the Florida Rules of Civil Procedure

allow for voluntarily dismissal at any time "before retirement of the jury." Fla. R. Civ. P.

1.420. Meanwhile, the Federal Rules contemplate a far narrower window for voluntary

dismissal: any time prior to the defendant's filing of an answer or motion for summary

judgment. The looser dismissal rules in Florida mean that parties may have expended far

more resources and conducted far more discovery at the time of a voluntary dismissal—

thus warranting an equitable need for greater court supervision over voluntarily

dismissals. Here, however, because this case is subject to the trade-offs associated with

the Federal Rules, the decisions of federal courts from this District and Circuit should be considered to be more persuasive than those of the Florida Supreme Court.

Finally, the Magistrate Judge's decision to proceed without notice and an opportunity to be heard has resulted in proceedings that are highly ambiguous. For example, all but one of the underlying cases were dismissed with prejudice. Because the Magistrate Judge is concerned with Plaintiff's conduct, it is unclear what changes he could make to those dismissals that would benefit the Defendants. By way of separate example, Rule 60 allows a district court to reopen a case upon a *finding* of fraud. But the Magistrate Judge has indicated that the purpose of reopening the cases is to *investigate* fraud. The Magistrate Judge's reopening of the underlying cases on the basis of fraud for the purpose of investigating fraud creates an appearance that the Magistrate Judge has prejudged the issue.

### B.    Show Cause Proceedings Were not Properly Initiated Under Rule 11

As for Rule 11, a court-initiated Rule 11 proceeding is properly commenced via a show-cause order. Fed. R. Civ. P. 11(c)(3). The show-cause order must specifically describe conduct that violates Rule 11(b). *Id.* The purpose of this requirement is to prevent federal courts from ensnaring litigants in ambiguous circumstances.

Here, the Magistrate Judge has not issued a show-cause order, and thus the participants to this supplemental proceeding have no notice of what the Magistrate Judge is contemplating.  Indeed, even now, Movant has no idea for what reason he is being summoned to appear at a case management conference, where his only connection to the case is that the Plaintiff directed that the proceeds of settlement be deposited in its trust

account at Prenda. Accordingly, even if he could properly initiate post-dismissal Rule 11 proceedings, the Magistrate Judge has not properly done so here.

## VI.     The Magistrate Judge is Without Jurisdiction to Order Movant to Appear

Movant objects to this Court's exercise of personal jurisdiction over him. Even if he had been properly brought before the Court, the Court would lack personal jurisdiction over him due to his lack of contacts with the State of Minnesota. Movant neither resides nor owns property in Minnesota and does not practice law in Minnesota. He accordingly resides outside Minnesota's long-arm jurisdiction statute. Moreover, it is the burden of the party—the Magistrate Judge, in this case)—seeking to invoke the Court's jurisdiction over another person to allege sufficient facts to make a prima facie case of personal jurisdiction over that person, and to produce evidence supporting jurisdiction if jurisdiction is challenged. *United Technologies Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009). The Magistrate Judge's sole basis for ordering Movant to appear is that AF Holdings directed that settlement funds be deposited into its client trust account at Prenda.

Further, even if the Court had personal jurisdiction over Movant, it is not clear that the Magistrate Judge would have the power to order the in-person appearance of a non-party witness who resides outside the territory of the Court's subpoena jurisdiction. *See In re Champion Int'l Corp.*, No. 88-5050 (8th Cir. Feb. 10, 1988) (LEXIS, Genfed Library, Dist file) (granting petition for writ of mandamus or prohibition; district court was without authority to direct Champion's C.E.O. and Senior Vice President to travel from Connecticut to Minnesota to appear at trial); *GFI Computer Indus., Inc. v. Fry*, 476

F.2d 1, 5 (5th Cir. 1973) ("[t]he court had no power to force a civil defendant outside its subpoena jurisdiction to appear personally at the trial and there submit to examination.").

**VII.   Alan Cooper's Repudiation is not Credible**

Alan Cooper's repudiation of his corporate representative status was addressed in a filing submitted by Plaintiff in *AF Holdings, L.L.C. v. David Harris*, No. 2:12-cv-02144 (D. Ariz. May 25, 2013), ECF No. 56, attached hereto as Exhibit A. The filing explains that Mr. Cooper linked up with Plaintiff in mid-2011 at a time when he was looking for business opportunities. Mr. Cooper sought help from his then-friend, John Steele, who put him in contact with Plaintiff's principal, Mark Lutz.

The filing further explains that Mr. Cooper's friends were well aware of his involvement with Plaintiff. Aff. of Jason Flesher ¶ 7 ("It was clear from the conversation that both Mr. Cooper and his wife were well aware that Mr. Cooper was responsible for signing some documents relating to that work."), attached hereto as Exhibit B; Aff. of Brent Berry ¶ 12 ("On at least one occasion, I recall Alan [Cooper] asking John [Steele], 'How's my porn company doing?'"), attached hereto as Exhibit C; Aff. of John Steele ¶ 11 ("My understanding is that Alan [Cooper] took me up on the offer and participated in a limited number of transactions in 2011 with Mr. Lutz's companies."), attached hereto as Exhibit D.

According to his own sworn testimony, Mr. Cooper's repudiation occurred shortly after he received an anonymous text message that threatened him with liability and provided him with attorney Godfread's contact information. It also occurred around the time that Mr. Steele decided to sell his Minnesota property and asked Mr. Cooper to

leave his property.   Ex. A at 7-9. At that time, which shortly predated attorney Godfread's letter to the Court, Mr. Cooper threatened Mr. Steele, stating "Steele had better pay him 'a lot of money' or 'he would be sorry for kicking him out.'" *Id.* at 9.

Mr. Cooper's repudiation appears to be the product of attorney Godfread's manipulation, Cooper's desire for revenge and both Cooper and Godfread's desire for financial gain.  It is not supported by any evidence other than the vague testimony Cooper delivered at the Los Angeles hearing, which was not subject to cross-examination.  The credibility of Cooper's vague testimony is undermined by his statements that "Steele had better pay him 'a lot of money' or 'he would be sorry for kicking him out.'" (Ex. A at 9) and that "[i]f [Brent Berry] pissed him off, they would never find [Brent Berry's] body, just like the others." (Ex. C ¶ 14.)

The facts surrounding Mr. Cooper's repudiation establish that it is not credible: Mr. Cooper was actively recruited by attorney Godfread; his story has shifted over time from one of being held out as AF Holdings' CEO to one of privacy violations; he filed a lawsuit seeking $4.6 million in damages against Steele and others; his letter to the Court and subsequent lawsuit—both of which raised concerns of privacy—were both heavily publicized; both he and his attorney were paid to travel to the March 11 hearing in the *Ingenuity13* matter; he was not subject to cross-examination at that hearing; he first expressed concern about his name's appearance on assignment documents nearly 1.5 years after the assignments were executed; and, finally, his repudiation is inconsistent with the observations of his friends and family—many of whom heard him bragging about his "porn companies."

The Magistrate Judge observed that a "finding of 'fraud on the court' is 'justified only by the most egregious misconduct directed to the court itself . . . and must be supported by clear, unequivocal and convincing evidence.'" (Order at 5 n.1) (quoting *Superior Seafoods, Inc. v. Tyson Foods, Inc.*, 620 F.3d 873, 880 (8th Cir. 2010). When the facts surrounding Mr. Cooper's repudiation are weighed against Mr. Cooper's vague testimony at the *Ingenuity13* hearing, the only thing that becomes "clear, unequivocal and convincing" is that this standard cannot possibly be satisfied in this matter. *Superior Seafoods, Inc.*, 620 F.3d at 880.

## CONCLUSION

The Court should vacate the July 15 Orders to Appear.

Respectfully submitted,

DATED: July 29, 2013

By: _____
Paul A. Duffy, Esq. (Bar No. 6210496)
2 N. LaSalle Street
13th Floor
Chicago, IL 60602
312-476-7645