# Class Justice PLLC

August 2, 2013

**Via CM/ECF**

The Honorable Franklin L. Noel
United States District Court
U.S. Courthouse, Suite 9W
300 South Fourth Street
Minneapolis, MN 55415

Dear Judge Noel:

I write to respond to Attorney Santi's letter dated July 29, 2013. The letter is a prototypical example of the tactics that are employed by certain elements of the copyright infringement defense bar. These tactics include, as the letter does, a resort to wildly inaccurate invective. To Plaintiff's knowledge, state and federal judges nationwide have rejected these tactics out-of-hand in the hundreds, if not thousands, of cases in which they have been deployed[1]—with one notable exception. In order to set the record straight, Plaintiff will highlight five egregious misstatements in the letter, although all of the invective is patently false.

1. *Since the settlement, Prenda representatives asserted their Fifth Amendment right against self incrimination at Judge Wright's Show Cause hearing thereby permitting the inference of a host of wrongdoings by Prenda in all of their cases.*

This statement displays the same casual disregard for fact that has characterized the filings of Attorney Santi and his peer attorneys—namely, lumping every copyright infringement plaintiff, attorney and law firm under the "Prenda" umbrella. To be clear, the Plaintiff in this matter was AF Holdings, LLC. The law firm of record was Alpha

---

[1] *See, e.g, Malibu Media, LLC v. Reynolds*, Civ. No. 12-6672 (N.D. Ill. Mar. 27, 2013) ("[T]he fact that suits of this nature settle quickly does not mean there is any wrongdoing on the part of copyright owners. It would be unfair to deprive owners of copyrights to pornographic material the same protections as owners of other copyrighted works.").

Law Firm, LLC. Attorney Santi has no basis for using the term "Prenda" interchangeably with Alpha Law Firm, LLC or AF Holdings, LLC.[2]

While the district court in Los Angeles displayed a similar tendency, the district court also found that "Prenda" started its "copyright-enforcement crusade" in about 2010[3] and that Alpha Law Firm, LLC started its operations in 2012.[4] Because the district court plainly erred on these issues, this Court should limit reliance on the other findings of the Los Angeles district court.

Further, the letter materially misstates the law by arguing that the invocation of the Fifth Amendment privilege against compelled testimony in *another* case by *different* individuals[5] permits the inference of an undefined "host of wrongdoings" in *this* case against: (1) a Plaintiff, AF Holdings, LLC, that has never invoked the Fifth Amendment; and (2) Attorney Dugas, who also has never invoked the Fifth Amendment. Attorney Santi did not cite to any authority that would support his legal proposition.[6]

---

[2] For the sake of the avoidance of all doubt, the undersigned is not criticizing or otherwise commenting on this Court's order requiring the attendance of a principal of Prenda Law, Inc. at the three of the five calendared case management conferences. Indeed, the Court has ordered attendance by a principal of Prenda Law, Inc. at only a subset of the case management conferences.

[3] According to the Illinois Secretary of State's website, Prenda Law, Inc. was not incorporated until November, 2011

[4] The Minnesota Secretary of State's website demonstrates that Alpha Law Firm, LLC was formed in early 2010.

[5] The only individuals who invoked their Fifth Amendment privilege against compelled testimony were the undersigned, Mr. Duffy and Mr. Steele. AF Holdings, LLC did not invoke the privilege. Neither did Prenda Law, Inc. or Alpha Law Firm, LLC, which, again was not present or involved.

[6] The other obvious problem with Attorney Santi's legal argument is that a court may only draw adverse inferences from a refusal to testify in response to probative evidence offered against a witness. In this case, there are not witnesses and there is no probative evidence.

2. *When the John Does received notification that their personal information was being subpoenaed by AF Holdings, they shared the Court's suspicion that these cases were shakedowns.*

Attorney Santi and his peer attorneys have long invoked the red-herring "shakedown" narrative to impugn copyright holders. Yet, in these cases—per the District Court's order—Plaintiff filed under seal every one of its settlement communications with the putative John Does. These filings demonstrate that Attorney Santi's "shakedown" narrative is a canard. In fact, Plaintiff invites the unsealing of the settlement communications with Attorney Santi's clients. The federal bar as a whole would benefit from learning how disingenuous the "shakedown" narrative truly is.

3. *Nevertheless, once early discovery was granted, the John Does were left with the choice of pursuing extremely expensive litigation in Federal court and enduring Prenda's intimidatory tactics, or settling…*

Attorney Santi's clients did not face the trade-off between enduring "extremely expensive litigation" and "intimidatory tactics" versus settling. Regarding the "intimidatory tactics" claim, the Court can see that Plaintiff reached settlements with represented and unrepresented parties alike. Further, the Court can review Plaintiff's settlement communications and see that Plaintiff operated with total professionalism, regardless of whether it was communicating with an attorney or a *pro se* individual. Finally, as represented parties, Attorney Santi's clients were never forced to communicate with Plaintiff. Plaintiff was required to communicate directly with Attorney Santi, and Plaintiff complied with that obligation.

As for the question of expense, Plaintiff faces the very same trade-off as the putative John Doe defendants. Further, the Copyright Act provides for prevailing-party attorneys' fees. Thus, if Attorney Santi's clients were truly innocent—a dubious proposition—then the costs of fighting would be passed onto Plaintiff. However, if they were guilty, then fighting would be a terrible economic decision, as other copyright infringement cases decided in this District and nationwide have demonstrated.

4. *Several Show Cause hearings have been held against Prenda across the country…*

Once again, Attorney Santi lumps every copyright holder, attorney and law firm under the "Prenda" umbrella. The facts are as follows: Attorney Santi cannot cite to

"several" show cause hearings that have been held against Prenda, because these proceedings simply do not exist. Aside from the Los Angeles district court, the undersigned was unable to identify a single other district court that has ever sanctioned Prenda or any of its clients in the hundreds of cases that Prenda appears to have filed on behalf of its clients. And the Los Angeles district court's order is currently the subject of eight appeals.

5. *The undersigned is unaware of an instance where the victims of these shakedown schemes have been ordered to appear at an investigation of Prenda's wrongdoing.*

Attorney Santi's characterization of his clients as "victims of these shakedown schemes" might speak to the quality of Attorney Santi's representation, but it otherwise has no basis in fact. Plaintiff filed every one of its settlement communications under seal. The record shows that no "shakedown" occurred. Instead, Plaintiff operated with total professionalism at every turn. If Attorney Santi's clients feel victimized, it is certainly not a result of any action that Plaintiff took.

*Conclusion*

Plaintiff hopes that this letter has shed light on the tactics the Court can expect from Attorney Santi and any interlopers in this case. For the reasons described herein, Plaintiff respectfully submits that the Court should disregard the invective in Attorney Santi's letter.

Respectfully Submitted,

Paul Hansmeier