UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| AF Holdings LLC, | Civil Nos.  12-1445 (JNE/FLN) |
| | 12-1446 (JNE/FLN) |
| Plaintiff, | 12-1447 (JNE/FLN) |
| | 12-1448 (JNE/FLN) |
| | 12-1449 (JNE/FLN) |
| v. | **ORDER** |
| John Doe, | |
| Defendant. | |

Paul Hansmeier & Michael K. Dugas for the plaintiff AF Holdings LLC.

The Court has reopened this matter for the purpose of determining whether the plaintiff committed a fraud on the court. ECF No. 13 for 12-CV-1445. On May 6, 2013, U.S. District Judge Otis D. Wright II of the Central District of California issued an order in a series of cases brought by AF Holdings LLC, the same plaintiff as the plaintiff in this case, and Ingenuity13 LLC, a different (but apparently related) plaintiff. Judge Wright found, among other things, that

1. [John] Steele, [Paul] Hansmeier, and [Paul] Duffy ("Principals") are attorneys with shattered law practices. Seeking easy money, they conspired to operate this enterprise and formed the AF Holdings and Ingenuity 13 entities (among other fungible entities) for the sole purpose of litigating copyright-infringement lawsuits. They created these entities to shield the Principals from potential liability and to give an appearance of legitimacy.

2. AF Holdings and Ingenuity13 have no assets other than several copyrights to pornographic movies. There are no official owners or officers for these two offshore entities, but the Principals are the de facto owners and officers.

3. The Principals started their copyright-enforcement crusade in about 2010, through Prenda Law, which was also owned and controlled by the Principals. Their litigation strategy consisted of monitoring BitTorrent download activity of their copyrighted pornographic movies, recording IP addresses of the computers downloading the movies, filing suit in federal court to subpoena

           Internet Service Providers ("ISPs") for the identity of the subscribers of these IP addresses, and sending cease-and-desist letters to the subscribers, offering to settle each copyright-infringement claim for about $4,000.

4.     This nationwide strategy was highly successful because of statutory-copyright damages, the pornographic subject matter, and the high cost of litigation. Most defendants settled with the Principals, resulting in proceeds of millions of dollars due to the numerosity of the defendants. These settlement funds resided in the Principals' accounts and not in accounts belonging to AF Holdings or Ingenuity 13. No taxes have been paid on this income.

5.     For defendants that refused to settle, the Principals engaged in vexatious litigation designed to coerce settlement. These lawsuits were filed using boilerplate complaints based on a modicum of evidence, calculated to maximize settlement profits by minimizing costs and effort.

6.     The Principals have shown little desire to proceed in these lawsuits when faced with a determined defendant. Instead of litigating, they dismiss the case. When pressed for discovery, the Principals offer only disinformation—even to the Court.

. . .

8.     The Principals maintained full control over the entire copyright-litigation operation. The Principals dictated the strategy to employ in each case, ordered their hired lawyers and witnesses to provide disinformation about the cases and the nature of their operation, and possessed all financial interests in the outcome of each case.

9.     The Principals stole the identity of Alan Cooper (of 2170 Highway 47 North, Isle, MN, 56342). The Principals fraudulently signed the copyright assignment for "Popular Demand" using Alan Cooper's signature without his authorization, holding him out to be an officer of AF Holdings. Alan Cooper is not an officer of AF Holdings and has no affiliation with Plaintiffs other than his employment as a groundskeeper for [John] Steele. There is no other person named Alan Cooper related to AF Holdings or Ingenuity13.

. . .

11.    Plaintiffs have demonstrated their willingness to deceive not just this Court, but other courts where they have appeared. Plaintiffs' representations about their operations, relationships, and financial interests have varied from feigned ignorance to misstatements to outright lies. But this deception was

> calculated so that the Court would grant Plaintiffs' early-discovery requests, thereby allowing Plaintiffs to identify defendants and exact settlement proceeds from them. With these granted requests, Plaintiffs borrow the authority of the Court to pressure settlement.

*Ingenuity 13 LLC v. Doe*, No. 2:12-cv-8333, ECF No. 130 at ¶¶ 1–11 (C.D. Cal. May 6, 2013), *available at* 2013 WL 1898633 at *2–3.

It appears to the Court that Judge Wright made these factual findings after issuing a series of show-cause orders and conducting two evidentiary hearings.

The misappropriation of Alan Cooper's identity was one of the subjects of the first show-cause hearing. *Ingenuity 13 LLC v. Doe,* No. 2:12-cv-8333, ECF No. 48 at 9–10 (C.D. Cal. Feb. 7, 2013). Judge Wright ordered Alan Cooper and the so-called Principals to appear in person at the hearing. *Id.* at ECF No. 66. Alan Cooper appeared. The Principals did not. Instead, the Principals sent Ms. Heather Rosing, an attorney with Klinedinst Law Offices, to specially appear on their behalf. *Id.* at ECF No. 93 at 5–6. At the first hearing, Alan Cooper testified that he did not sign the copyright assignment agreements for Popular Demand and Sexual Obsession. *Id.* at 27–29. It appears that Ms. Rosing elected not to cross-examine Mr. Cooper regarding these assertions. *Id.* at 36.

After the hearing, Judge Wright ordered the Principals to appear at a second show-cause hearing. *Id.* at ECF No. 86. He also included the Principals' relationship with the plaintiff as one of the subjects of the second show-cause hearing. *Id.* at 2–3. The plaintiff and the Principals all appeared at the second hearing, but the Principals refused to testify—citing their Fifth Amendment privilege against self-incrimination. *Id.* at ECF No. 103 at 7–10.

In light of the foregoing, it is **HEREBY ORDERED** that:

1. The plaintiff shall file a memorandum of law on or before August 26, 2013

    showing cause as to why Judge Wright's factual findings are not binding against it in these cases under the common law doctrine of issue preclusion. *See, e.g., Bechtold v. City of Rosemount*, 104 F.3d 1062, 1066–67 (8th Cir. 1997) (issue preclusion appropriate under Minnesota law if (1) the issues are identical; (2) the prior adjudication ended with a final judgment on the merits; (3) the plaintiff was a party to the prior adjudication; and (4) the plaintiff was given a full and fair opportunity to be heard on the adjudicated issue).

2. The Clerk of Court shall correct the docket to reflect that Mr. Michael K. Dugas remains counsel of record for the plaintiff. Although he filed a notice of withdrawal and substitution, his withdrawal was not effective upon filing under Local Rule 83.7(b) because it would delay the progress of this case.[1] He signed the complaint to which the forged documents were attached. If Mr. Dugas wishes to withdraw as counsel of record for the plaintiff, he must proceed in accordance with Local Rule 83.7(c) and establish good cause to do so.

DATED: August 19, 2013                  *s/ Franklin L. Noel*
                                                         FRANKLIN L. NOEL
                                                         United States Magistrate Judge

---

[1] Mr. Dugas's recently filed notice of withdrawal pursuant to Local Rule 83.7(a) does not change the Court's analysis.