**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

AF HOLDINGS LLC,                          CASE Nos. 12-cv-1445 (JNE/FLN)

      Plaintiff,

v.

JOHN DOE,                                 Judge: Hon. Joan N. Ericksen

      Defendant.                          Magistrate Judge: Hon. Franklin L. Noel

---

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO
DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................... 1

LEGAL STANDARD ................................................................................... 3

BACKGROUND .......................................................................................... 3

    I.    Procedural History ................................................................... 3

    II.   Plaintiff's Experience in the *Ingenuity 13* Proceedings ............... 6

        A.    The *Ingenuity 13* Findings are Untenable ....................... 10

        B.    The *Ingenuity 13* Court's Actual Findings of Misconduct .......................................................... 11

    III.  Alan Cooper's Repudiation ................................................... 12

ARGUMENT ............................................................................................. 13

    I.    Mr. Cooper's Repudiation is not a Case or Controversy before This Court ................................................................. 13

    II.   The Magistrate Judge Invoked Article III Powers ..................... 16

    III.  The Cases Were Not Properly Reopened .................................. 18

        A.    The Cases Were Not Properly Reopened Under Rule 60 ....................................................................... 19

        B.    Show Cause Proceedings Were not Properly Initiated Under Rule 11 .......................................................... 21

## TABLE OF AUTHORITIES

**Cases**

*AF Holdings LLC v. Doe*,
   No. 2:12-cv-6636-ODW(JCx) (C.D. Cal. filed August 1, 2012) ............................ 7, 8

*AF Holdings LLC v. Does 1-96*,
   No. 11-cv-3335-JSC (N.D. Cal. Nov. 22, 2011) ....................................................... 14

*AF Holdings, L.L.C. v. David Harris*,
   No. 2:12-cv-02144 (D. Ariz. May 25, 2013) ............................................................. 12

*Bennett v. General Caster Service of N. Gordon Co.*,
   976 F.2d 995 (6th Cir. 1992) ..................................................................................... 17

*Braden v. Wal-Mart Stores, Inc.*,
   558 F.3d 585 (8th Cir. 2009) ....................................................................................... 3

*Commodity Futures Trading Comm'n v. Schor*,
   478 U.S. 833 (1986) .................................................................................................... 18

*Cooter & Gell v. Hartmarx Corp.*,
   496 U.S. 384 (1990) .............................................................................................. 16, 20

*Despatch Industries Limited Partnership v. TP Solar, Inc.*,
   No. 2:11-cv-2357-R-FMO (C.D. Cal. Nov. 28, 2011) ................................................ 7

*Griffin v. California*,
   380 U.S. 609 (1965) ..................................................................................................... 9

*Homico Constr. & Dev. Co. v. Ti-Bert Sys., Inc.*,
   939 F.2d 392 (6th Cir. 1991) ..................................................................................... 17

*Ingenuity 13 LLC v. Doe*,
   No. 2:12-cv-8333 (C.D. Cal, May 6, 2013) ...................................................... passim

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) ..................................................................................................... 3

*Mt. Healthy City Bd. of Ed. v. Doyle*,
   429 U.S. 274, 278 (1977) ............................................................................................. 3

*Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*,
   458 U.S. 50 (1982) ..................................................................................................... 17

*Pacemaker Diagnostics Clinic of America v. Instromedix,*
25 F.2d 537 (9th Cir. 1984) ................................................................. 18

*Pierson v. Dormire,*
484 F.3d 486 (8th Cir. 2007) ............................................................... 20

*Rowley v. United States,*
191 F.2d 949 (8th Cir. 1951) ............................................................... 13

*Slochower v. Board of Higher Education,*
350 U.S. 551 (1956) ............................................................................. 9

*Taylor Corp. v. Four Seasons Greetings, LLC,*
403 F.3d 958 (8th Cir. 2005) ............................................................... 13

*Thomas v. Basham,*
931 F.2d 521 (8th Cir. 1991) ................................................................. 3

*Thomsen v. Famous Dave's of America, Inc.,*
640 F. Supp. 2d 1072 (D. Minn. 2009) ............................................... 13

*U.S. v. Torres,*
258 F.3d 791 (8th Cir. 2011) ............................................................... 18

*Ullmann v. United States,*
350 U.S. 422 (1956) ............................................................................. 9

*Williams v. Rogers,*
449 F.2d 513 (8th Cir. 1971) ................................................................. 3

*Zambrano v. City of Tustin,*
885 F.2d 1473 (9th Cir. 1989) ............................................................... 6

**Federal Rules**

17 U.S.C. § 204 ......................................................................................... 13

28 U.S.C. § 636 ................................................................................... 16, 17

Fed. R. Civ. P. 11 ................................................................................. 8, 21

Fed. R. Civ. P. 4 ......................................................................................... 8

Fed. R. Civ. P. 41 .......................................................................... 8, 19, 20

iii

Fed. R. Civ. P. 60 ........................................................................................................ 20

Fed. R. Evid. 901 ........................................................................................................ 21

Fla. R. Civ. P. 1.420 .................................................................................................... 19

LR 72.1 .................................................................................................................. 16, 17

## MEMORANDUM

Plaintiff AF Holdings LLC, by and through its counsel, hereby moves to dismiss this case for lack of subject matter jurisdiction.

## INTRODUCTION

On June 20, 2013, the Honorable Magistrate Judge Noel issued an order (ECF No. 13) *sua sponte* reopening this case, which was previously dismissed pursuant to Federal Rule of Civil Procedure 41(a)(1). (*See* ECF No. 12.)[1] The Magistrate Judge's reason for doing so was his concern that: "[P]laintiff has relied on forged documents in securing multiple court orders authorizing the discovery of information that, in turn, led to settlements in [this case]." (*Id.* at 3.) The Magistrate Judge's concern arose from the Order Issuing Sanctions, entered in *Ingenuity 13 LLC v. Doe*, No. 2:12-cv-8333-ODW(JCx) (C.D. Cal, May 6, 2013), and a letter dated November 29, 2012, filed by attorney Paul Godfread, counsel for one Alan Cooper, in which Mr. Godfread stated that his "client's name or identity is being used without his consent as the CEO of AF Holdings, LLC." (*See* ECF No. 13 at 2.) A quarter of a year has passed since the Magistrate Judge reopened the case; no one has identified a document in which Mr.

---

[1] The Magistrate Judge issued identical orders in five cases. *See AF Holdings LLC v. John Doe*, 12-cv-1445, ECF No. 13 (D. Minn. June 20, 2013); AF *Holdings LLC v. John Doe*, 12-cv-1446, ECF No. 12 (D. Minn. June 20, 2013); *AF Holdings LLC v. John Doe*, 12-cv-1447, ECF No. 19 (D. Minn. June 20, 2013); *AF Holdings LLC v. John Doe*, 12-cv-1448, ECF No. 12 (D. Minn. June 20, 2013); *AF Holdings LLC v. John Doe*, 12-cv-1449, ECF No. 33 (D. Minn. June 20, 2013). Plaintiff's docket cites in this memorandum are keyed to the filings in Case No. 12-cv-1445.

Cooper has been held out as Plaintiff's CEO in this case—or any other case nationwide, for that matter.

Although this motion argues jurisdictional issues, Plaintiff does not wish to convey the impression that it concedes whatsoever the substance of Mr. Cooper's allegations. To the contrary, Plaintiff believes that Mr. Cooper's efforts are an ineptly-orchestrated fraud on the federal courts. With every passing week, Plaintiff learns more information about Mr. Cooper's repudiation and the actors behind it. Further, Mr. Cooper's allegations are being tested in a case pending in the U.S. District Court for the Northern District of Illinois, where a complaint filed against Mr. Cooper—and his attorney, Mr. Godfread—recently survived a motion to dismiss. For the Court's background, Mr. Cooper's counterclaims did not survive the plaintiff's cross-motion to dismiss.

Finally, Plaintiff has taken every effort within its power to disclose Mr. Cooper's allegations and to distance itself from Mr. Cooper's bizarre antics. With respect to the former, after Mr. Cooper disclaimed his signature on March 11, 2013, Plaintiff instructed its counsel to file notices of Mr. Cooper's allegations in each of its open matters.[2] Further, Plaintiff reassigned its copyright so as to remove Mr. Cooper's name from it.

_____

[2]*See, e.g., AF Holdings LLC v. John Doe*, No. 1:12-cv-04244 (N.D. Ill. 2012); *AF Holdings LLC v. John Doe*, No. 1:12-cv-05075 (N.D. Ill. 2012); *AF Holdings LLC v. John Doe*, No. 1:12-cv-08030 (N.D. Ill. 2012); *AF Holdings LLC v. John Doe*, No. 1:12-cv-1398 (C.D. Ill. 2012); *AF Holdings LLC v. John Doe*, No. 1:12-cv-03567 (N.D. Ill. 2012); *AF Holdings LLC v. John Doe*, No. 1:12-cv-03568 (N.D. Ill. 2012); *AF Holdings LLC v. John Doe*, No. 1:12-cv-03570 (N.D. Ill. 2012); *AF Holdings LLC v. John Doe*, No. 1:12-cv-04232 (N.D. Ill. 2012); *AF Holdings LLC v. John Doe*, No. 1:12-cv-04235 (N.D. Ill. 2012); *AF Holdings LLC v. John Doe*, No. 1:12-cv-04237 (N.D. Ill. 2012); *AF*

As for this motion, the Court lacks subject matter jurisdiction over this case for three reasons: (1) Alan Cooper's repudiation is not a case or controversy before this Court; (2) the Magistrate Judge violated Article III by reopening this case; and (3) even if the Magistrate Judge possessed Article III powers, the powers were not properly exercised.

## LEGAL STANDARD

Subject matter jurisdiction is an essential element of every judicial proceeding and must be demonstrated "at the successive stages of the litigation." *Braden v. Wal-Mart Stores, Inc.*, 558 F.3d 585, 592 (8th Cir. 2009) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). The existence of subject matter jurisdiction is an ongoing inquiry that a court must conduct *sua sponte* in order to continue the case. *Mt. Healthy City Bd. of Ed. v. Doyle*, 429 U.S. 274 (1977); *Thomas v. Basham*, 931 F.2d 521, 522-23 (8th Cir. 1991). When subject matter jurisdiction is absent, a court has no discretion and must dismiss the case. *Williams v. Rogers*, 449 F.2d 513, 518 (8th Cir. 1971).

## BACKGROUND

**I.   Procedural History**

This case was filed on June 15, 2012, as an action against an unidentified individual for copyright infringement. (*See* ECF No. 1.) After filing its case, Plaintiff sought the Court's leave to discover the identities of the John Doe defendant. (*See* ECF

---

*Holdings LLC v. John Doe*, No. 1:12-cv-04239 (N.D. Ill. 2012); *AF Holdings LLC v. Neer Reibenbach*, No. 1:12-cv-01893 (M.D. Pa. 2012).

No. 3.)  Under this District's Local Rules, the matter was automatically delegated to the

Magistrate Judge, who denied Plaintiff's discovery request on the grounds that:

> (1) the requested discovery was not very likely to reveal the identity of the alleged infringer; (2) personal jurisdiction may not exist over the alleged infringer; and (3) the pornographic copyright holder's activities in pursuit of settlement agreements may constitute an 'abuse of the judicial system.'

(*See* ECF No. 8.) Plaintiff objected to the Magistrate Judge's order and the Court

sustained Plaintiff's objections. (*See* ECF No. 10.) The Court also ordered Plaintiff's

counsel to file, under seal, copies of all written and oral communications between

Plaintiff and the John Doe defendant. (*See id.*)

Plaintiff attached a copyright assignment to its complaint.[3] (*See* ECF No. 1-1.) The

assignment listed Plaintiff as the assignee. (*See id.*) Raymond Rogers signed the

assignment on behalf of the assignors. (*See id.*) Alan Cooper acknowledged the

assignment on Plaintiff's behalf. (*See id.*) Plaintiff then issued subscriber identification

subpoenas. The complaint was ultimately dismissed with prejudice pursuant to Fed. R.

Civ. P. 41(a)(1). (ECF No. 12.)

On June 20, 2013, the Magistrate Judge issued an order to initiate an investigation

into fraud on the Court. (ECF No. 13.) Although the order did not explicitly state that the

case was reopened, a follow-up July 16, 2013, order implied that the June 20 order had,

in fact, reopened the case. (ECF No. 15.) The July 16 order scheduled a preliminary case-

---

[3] The assignment transferring the work, "Sexual Obsession" was dated June 12, 2011. (*Id.*) The assignment transferring the work, "Popular Demand," was dated December 20, 2011. (*Id.*)

management conference for August 5, 2013. (*Id.*) The order required the personal attendance of Plaintiff's officer, Mark Lutz, an officer of Prenda Law, Inc., Paul Duffy, and the putative Doe Defendant.[4] (*Id.*) Mr. Cooper's attorney, Paul Godfread, sought and was granted leave to appear at the case management conferences as well.

Two of the putative Doe Defendants declined to appear at the case management conferences. Three of the putative Doe Defendants did appear. During the case management conferences, the Magistrate Judge reiterated his concerns regarding the *Ingenuity 13* order, and indicated that if Plaintiff returned any settlement funds it had received, then the Magistrate Judge would consider the matters closed. Otherwise, the cases would remain open and the Magistrate Judge would rule on any motion that was filed. The Magistrate Judge asked Plaintiff and the putative Doe Defendants to indicate their intentions by August 16, 2013.

After giving the matter careful consideration, on August 16, 2013, Plaintiff filed a notice with Magistrate Judge to inform him that Plaintiff had elected to litigate this matter. (ECF No. 30.) Plaintiff recognized that it cannot allow Mr. Cooper, his attorney and other actors to perpetrate a fraud against it in the federal courts. On the same day, the Doe Defendants filed notices that they did not intend to participate any further in this matter. (ECF No. 33.)

Notwithstanding the absence of any pending motion, on August 19, 2013, the Magistrate Judge issued an order to show cause for why issue preclusion should not apply

---

[4] The Magistrate Judge's basis for ordering the appearance of Mr. Duffy was that the settlement agreement ordered funds to be paid into Plaintiff's trust account at Prenda Law, Inc. (*Id.*)

with respect to the findings made in *Ingenuity 13*. (*See* ECF No. 34.) Plaintiff responded. (ECF No. 35.) On August 28, 2013, the Magistrate Judge issued a second order, in which he stated, "[I]t appears that a genuine issue of material fact exists as to whether those agreements[5] are authentic." (ECF No. 36.) The order further scheduled an evidentiary hearing at which Plaintiff has been directed to argue a Federal Rule of Evidence 901(a) issue even though Plaintiff has not moved for the admission of any evidence. Plaintiff's objection to that order is pending before this Court. (ECF No. 37.)

## II.    Plaintiff's Experience in the *Ingenuity 13* Proceedings

The primary driver of the Magistrate Judge's concerns appears to be the Order Issuing Sanctions that was entered in the *Ingenuity 13* proceedings. To put the Order Issuing Sanctions in its proper context, Plaintiff would note that appellate courts are a feature of the federal judiciary for good reason. *Cf, e.g., Zambrano v. City of Tustin*, 885 F.2d 1473, n.3 (9th Cir. 1989) ("[W]e can only assume that [the district court] is in error that another judge of the Central District shackled an attorney for a simple violation of a local rule."). By way of a local example, Fredrickson & Byron, P.A. was recently sanctioned by a district court in the Central District of California in the amount of $358,011.15 for lodging frivolous findings, engaging in vexatious tactics, pressing insupportable claims, assisting its client bring litigation in subjective bad faith and aiding

---

[5] Plaintiff presumes the Magistrate Judge is referring to the assignments that were attached to the complaints.

its client bring litigation that was objectively baseless.[6] While Plaintiff is not familiar with the facts and circumstances of the sanctions award against Fredrickson & Byron, Plaintiff does not believe that the issuance of sanctions in a single case against Fredrickson & Bryon should prompt a review of every single case in which the firm has appeared. Further, Plaintiff does not believe that significant reliance should be placed on the sanctions award against Fredrickson & Byron until it has been reviewed by the U.S. Court of Appeals for the Federal Circuit.

With respect to its case, Plaintiff disagrees in the strongest possible terms with the Order Issuing Sanctions. Further, Plaintiff is confident that it will be able to demonstrate on appeal that the district court abused its discretion. However, Plaintiff wishes to make clear that its challenge to the Order Issuing Sanctions relates directly to the order and the abuse of discretion which characterized it—and is not personal to any district judge. Plaintiff has the highest level of respect for the federal courts.

Plaintiff was a party to several cases that were filed in the U.S. District Court for the Central District of California, and later reassigned to a single district judge. *E.g.*, *AF Holdings LLC v. Doe*, No. 2:12-cv-6636-ODW(JCx) (C.D. Cal. filed August 1, 2012). Plaintiff's sole attorney of record in each of those cases was Brett Gibbs. As is relevant here, each of these cases was dismissed pursuant to Federal Rule of Civil Procedure

---

[6] *See, e.g.,* Order Granting Defendant TP Solar, Inc.'s Motion for Sanctions Pursuant to Fed. R. Civ. P. 11, *Despatch Industries Limited Partnership v. TP Solar, Inc.*, No. 2:11-cv-2357-R-FMO (C.D. Cal. Nov. 28, 2011) at ECF No. 155 (granting defendant's motion for sanctions against, *inter alia*, Fredrickson & Byron, P.A. in the amount of $358,011.15 for lodging frivolous findings, engaging in vexatious tactics, pressing insupportable claims, assisting its client bring litigation in subjective bad faith and aiding its client bring litigation that was objectively baseless.

41(a)(1) or 4(m). *See, e.g., id.* at ECF No. 21. On February 7, 2013, after each of

Plaintiff's cases was dismissed, the Los Angeles court issued an order to show cause

pursuant to Federal Rule of Civil Procedure 11 against Mr. Gibbs. *See, e.g., id.* at ECF

No. 23. The order to show cause specifically excluded Plaintiff as a respondent. *See id.* at

10. The two Rule 11 violations relating to Mr. Gibbs' representation of Plaintiff were:

- In *AF Holdings LLC v. Doe*, No. 2:12-cv-6636-ODW(JCx) (C.D. Cal. filed Aug. 1, 2012), violating the Court's October 19, 2012 Order instructing AF Holdings to cease its discovery efforts based on information obtained through any earlier-issued subpoenas; and

- In *AF Holdings LLC v. Doe*, No. 2:12-cv-6669-ODW(JCx) (C.D. Cal. filed Aug. 2, 2012), violating the Court's October 19, 2012 Order instructing AF Holdings to cease its discovery efforts based on information obtained through any earlier-issued subpoenas.

*Id.* at 9-10. The Los Angeles court did *not* issue an order to show cause regarding

Plaintiff's copyright assignments.[7] *Id.*

On February 9, 2013, Plaintiff's attorney, Mr. Gibbs, submitted a response to the

order to show cause through his counsel. *See Ingenuity 13 LLC* at ECF No. 49. On

February 27, 2013, the Los Angeles court ordered Mr. Gibbs to identify various

individuals who were alluded to in Mr. Gibbs' response. *See id.* at ECF No. 57. Mr.

Gibbs responded on March 1, 2013, naming Mr. Lutz as the "CEO of AF Holdings." *Id.*

---

[7] The only Alan Cooper issue subject to any show cause order was: "In *Ingenuity 13 LLC v. Doe*, No. 2:12-:-cv-8333-ODW(JCx) (C.D. Cal. filed Sept. 27, 2012), perpetrating fraud on the Court by misappropriating the identity of Alan Cooper and filing lawsuits based on an invalid copyright assignment." *Ingenuity 13 LLC v. Doe*, No. 2:12-cv-8333, ECF No. 48 at 10 (C.D. Cal. Feb. 7, 2013). The validity of Plaintiffs' assignments was never a subject of an order to show cause issued by the Los Angeles court.

at 58. On March 5, 2013, the Los Angeles court ordered eight individuals—including Plaintiff's manager, Mark Lutz—to appear from across the United States at the March 11, 2013, hearing, and ordered Mr. Gibbs to serve a copy of the orders on the summoned individuals by March 7, 2013. *Id.* at 66. The order gave the summoned individuals a single business days' notice to make arrangements to appear at the hearing. Mr. Lutz appeared via telephone at the hearing, but was not asked any questions, given an opportunity to cross-examine witnesses (including Mr. Cooper) or allowed to present evidence. *See generally id.* at ECF No. 93.

On March 14, 2013, the Los Angeles court issued a second order to show cause. *See id.* at 86. This time, the order to show cause was issued against thirteen different persons, including Plaintiff and Mr. Lutz. The order to show cause did not challenge Plaintiff's assignments. *See id.* Plaintiff, through its manager Mr. Lutz, appeared in person at the April 2, 2013, hearing. At the hearing, the Los Angeles court rejected several attempts by respondents to present arguments. *See id.* at ECF No. 103. Instead, the Los Angeles court abruptly ended the hearing when Messrs. Duffy, Steele and Hansmeier invoked the Fifth Amendment privilege against compelled testimony in order, *inter alia*, to avoid violating the attorney client privilege.[8] *See id.* Neither Plaintiff nor

---

[8] In the June 20, 2013, order, the Magistrate Judge referenced the invocation of the Fifth Amendment. *Griffin v. California*, 380 U.S. 609 (1965). "Too many, even those who should be better advised, view this privilege as a shelter for wrongdoers. They too readily assume that those who invoke it are either guilty of crime or commit perjury in claiming the privilege." *Ullmann v. United States*, 350 U.S. 422, 426 (1956). Rather, "[t]he privilege serves to protect the innocent who otherwise might be ensnared by ambiguous circumstances." *Slochower v. Board of Higher Education*, 350 U.S. 551, 557, 558 (1956); *accord Griffin*, 380 U.S. at 613. Any implication of wrongdoing would be counter to the

Mr. Lutz was given an opportunity to answer questions or present evidence. *See id.* Mr. Cooper did not appear at the April 2, 2013 hearing. *See id.* The hearing lasted an estimated twelve minutes.

### A.     The *Ingenuity 13* Findings are Untenable

The Los Angeles order to show cause proceedings constituted an abuse of discretion. Examples abound, but the Los Angeles court's statements, "*Unfortunately,* other than these specific instances of fraud, the Court cannot make more detailed findings of fraud," and, "this punitive portion is calculated to be *just below the cost of an effective appeal,*" are strong indicators that the Los Angeles proceedings were not conducted in a manner that will be sustained on appeal. *See id.* ECF No. 130 (emphasis added). The findings issued in the Los Angele proceedings are untenable. Plaintiff will highlight a few examples, but virtually every one of the findings was problematic:

| Finding | Evidence |
|---|---|
| "The Principals started their copyright-enforcement crusade in about 2010, through Prenda Law…" *Id.* at ECF No. 130, 4:8-9. | Prenda Law, Inc. was incorporated on November 7, 2011. *See* www.ilsos.gov, click the "Business" tab, click Corporation/LLC Search, and enter search term, "Prenda Law, Inc." (last visited August 24, 2013). |
| The Principals held out Alan Cooper as an officer of AF Holdings. *Id.* at 5:11-12. | The Los Angeles court did not identify a document in which Mr. Cooper was held out as Plaintiff's officer. No such document exists in the record. |

Supreme Court's express instructions. This is particularly true where, as here, the invocation of the privilege was made, *inter alia*, to avoid violating the attorney-client privilege. *See Ingenuity 13, LLC* at ECF No. 103, 7:16-18.

"These settlement funds resided in the Principals' accounts…." *Id.* at 4:19-20.

*See* ECF No. 15 in 12-cv-1445 at n. 1 ("The 'confidential release and settlement agreement', filed under seal, required the defendant to send a settlement check to Prenda Law, Inc.").

"As evidence materialized, it turned out that Gibbs was just a redshirt." *Id.* at 2:15-16.

MEMBER OF THE AUDIENCE:[9] "I had a conversation with Gibbs probably back in October regarding AF Holdings where he told me that he was national counsel for AF Holdings and that any settlement negotiations were to be made through him. And the local counsel for that case confirmed that he was the one who told me to contact Mr. Gibbs.

The Los Angeles court's findings were not based on evidence, but instead were based on conjecture. *See id.* at ECF No. 103, 8:23-9:1 ("Let's cut to the chase. I am really not interested in – I want to know if some of my conjecture is accurate. *The only way I can find out* is to have the principles [sic] here and answer those questions.") (emphasis added).

## B.    The *Ingenuity 13* Court's Actual Findings of Misconduct

Despite making extensive fact "findings" regarding Plaintiff's corporate structure, the background of the so-called "Principals", the Alan Cooper issue, the methods employed in copyright infringement litigation and attorney Brett Gibbs, the Los Angeles court ultimately made two very narrow, case-specific findings of misconduct. First, the Los Angeles court found that Brett Gibbs made misrepresentations to the court. *Id.* at

---

[9] The Los Angeles court allowed people in the public gallery to offer testimony during the March 11, 2013, order to show cause hearing, but did not give Plaintiff the same opportunity.

ECF No. 130, 8:4-12.  Second, the Los Angeles court determined that Mr. Gibbs ignored the court's order vacating early discovery. *See id.* While the Los Angeles court referenced the "Alan Cooper forgery," it could not make an actual finding that the Alan Cooper issue constituted a fraud on the court. *See id.* Instead, the Los Angeles court found that the Alan Cooper issue, "smacked of fraud." *Id.*

## III.    Alan Cooper's Repudiation

On November 29, 2012, Attorney Paul Godfread filed a letter with the Court that expressed concern that his client, Mr. Cooper, was wrongly being held out as Plaintiff's CEO. (*See* ECF No. 18 in 12-CV-1449.) Godfread's letter attached twenty-three pages of exhibits, but did not attach an exhibit in which his client was actually identified as AF Holdings' CEO. (*See id.*) Further, facts regarding Mr. Cooper's repudiation were set forth in Plaintiff's response to an order to show cause that issued in *AF Holdings, L.L.C. v. David Harris*, No. 2:12-cv-02144 (D. Ariz. May 25, 2013), ECF No. 56. The filing sets forth facts that greatly undermine Mr. Cooper's credibility.

Further, it bears mentioning that it has never been entirely clear what Mr. Cooper's allegations are. At times they have focused on his status as an officer of Plaintiff. At others they have focused on whether the signature on Plaintiff's assignments resembles his personal signature. Part of the problem is that his attorney, Paul Godfread, has not clearly stated Mr. Cooper's claims. *See Paul Duffy v. Paul Godfread et al*, No. 1:13-cv-1569 (N.D. Ill Aug. 14, 2013) ("The facts of [Cooper's] Counterclaim are poorly drafted and were perhaps copied from one of the many lawsuits related to this case.").

12

## ARGUMENT

**I.   Mr. Cooper's Repudiation is not a Case or Controversy before This Court**

The Magistrate Judge's stated concern is that Plaintiff submitted forged documents to the Court. Yet, as a matter of law and common sense, Mr. Cooper's repudiation has nothing to do with this issue. Forgery requires a showing of intent to defraud. *E.g., Rowley v. United States,* 191 F.2d 949, 950 (8th Cir. 1951) ("[F]orgery may be committed by the signing of a fictitious name, provided, of course, that the instrument as so completed is made with the intent to defraud."). As described herein, however, the appearance of Mr. Cooper's name had no operative effect other than the clerical function of acknowledging Plaintiff's receipt of the assignment. And Plaintiff did, in fact, intend to acknowledge its receipt of the assignment. Thus, even if Mr. Cooper's repudiation was credible—and it is not—the appearance of Mr. Cooper's name on the assignment could not possibly satisfy the elements of forgery.

The elements of a copyright assignment are: (1) a writing; (2) signed by the assignor.   17 U.S.C. § 204; *see also Taylor Corp. v. Four Seasons Greetings, LLC*, 403 F.3d 958, 963 (8th Cir. 2005) (explaining that copyrights may be transferred from one entity to another when the assignment "is in writing and signed by the *owner* of the rights conveyed or such owner's duly authorized agent.") (emphasis added) (citing 17 U.S.C. § 204(a)); *Thomsen v. Famous Dave's of America, Inc.*, 640 F. Supp. 2d 1072, 1078 (D. Minn. 2009) ("Further, to transfer ownership of a copyright, there must be a writing signed by the owner. The writing need not contain any particular words or phrases; rather

the inquiry is to give effect to the intent of the parties, which must demonstrate a transfer of the copyright.").

Here, the intent of the parties to the assignment was to transfer ownership of a copyright—and, indeed, the parties to the assignment agree that this transfer occurred. (*See* ECF No. 19-5 at 6) (Raymond Rogers affirming his understanding that the copyrights were transferred.) The assignment also satisfied the formal requirements of the Copyright Act; it was: (1) a writing; and (2) signed by the assignor. *See id.*

Mr. Cooper's allegations do not bear on Plaintiff's ownership of its copyright. As a district court in the Northern District of California stated:

> The written copyright assignment recites that it is between the original copyright owner, Heartbreaker Films, and Plaintiff here, AF Holdings, LLC. While the assignment is signed by a representative of the assignors, it is not signed by a representative of the assignee, AF Holdings, LLC. Instead, it is signed by a representative of AF Films, LLC. As the law requires only that the assignment be signed by the assignor and not the assignee . . . this inconsistency does not prevent a prima facie showing of copyright ownership.

*AF Holdings LLC v. Does 1-96*, No. 11-cv-3335-JSC (N.D. Cal. Nov. 22, 2011), ECF No. 29 at 5 n.1 (internal citations omitted). In short, Mr. Cooper's repudiation does not bear on copyright ownership.

Mr. Cooper's repudiation also does not bear on forgery. While the Los Angeles district court stated the truism that, "a forgery is still a forgery," the law states that an element of the offense of forgery is an intent to defraud. The Los Angeles district court did not and could not find an intent to defraud. In fact, the Los Angeles district court

observed that "[A] recipient of a copyright assignment need not sign the document," making clear that Mr. Cooper's signature could not have been intended to induce anyone's reliance.

The only purpose the assignment was ever intended to serve (and ever did serve) was to transfer the copyright to Plaintiff. Alan Cooper's acknowledgement of the assignment on Plaintiff's behalf was a purely clerical function that was never intended to be relied on by anyone for any reason—except, of course, by Plaintiff. The great irony of Alan Cooper's repudiation is that Plaintiff is the only party that has been harmed by it. Plaintiff authorized Mr. Cooper to perform a clerical function on its behalf and has every reason to believe that Mr. Cooper fulfilled that role. Now that Mr. Cooper has repudiated his role, Plaintiff has been the subject of scores of unsubstantiated claims of wrongdoing. While every court (other than the Los Angeles district court) has rejected these claims, defending against the claims has been extremely time-consuming and costly.

In this case, Plaintiff attached the assignment to its complaint in order to demonstrate that the assignment satisfied the formal requirements of a copyright transfer. Plaintiff did not intend, could not have expected, and does not believe that the Court placed any reliance on Mr. Cooper's signature. Indeed, the Court's order authorizing Plaintiff to issue subscriber identification subpoenas made no mention of Mr. Cooper or his signature. (*See generally* ECF No. 10.) Mr. Cooper's signature could not have defrauded anyone in the statutory sense and therefore could not possibly constitute a forgery.

What Mr. Cooper's repudiation actually boils down to is a personal dispute between Mr. Cooper and Mr. Steele. For his part, Mr. Cooper filed a complaint in Minnesota state court alleging that Mr. Steele misappropriated his name. In response, Mr. Steele answered and counterclaimed, alleging that Mr. Cooper used a chainsaw to destroy Mr. Steele's guest cabin, stole Mr. Steele's guns, and stole wood from Mr. Steele's land. Even if Mr. Cooper's claims regarding Mr. Steele were proven true—and they were not—the resolution of these issues has no bearing on the issues in *this* case. This Court's constitutional mandate is to decide the cases and controversies that are brought before it, not cases and controversies brought before other courts.

## II.    The Magistrate Judge Invoked Article III Powers

A second reason why jurisdiction is lacking is that the Magistrate Judge—and not this Court—invoked Article III powers. An Article I judge's authority is derived from district court designations. *See* 28 U.S.C. § 636(b). This District's Local Rules establish three categories of designations. *See* LR 72.1. First, a magistrate judge is automatically designated to hear a broad range of pretrial matters, a narrow range of criminal matters and to conduct settlement conferences in civil cases. *See* LR 72.1(a). This category does not cover reopening a case or convening a supplemental proceeding. *See id.*; *see also Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395 (1990) (stating that post-dismissal motions under Rule 11 are independent and supplemental to the original proceeding);. As the Sixth Circuit stated:

> Section 636(b)(1)(A) confers jurisdiction on magistrate judges to determine, with certain exceptions, pretrial matters that are pending before the court. Although the Rule 11

> sanctions in the present case were based on pretrial conduct, namely, the failure to make reasonable inquiry into jurisdiction prior to filing the complaint, the Rule 11 motion was not a pending pretrial matter, because it was not made until after judgment on the underlying claim already had been entered and an appeal taken. Therefore, for this additional reason, although the district court would have had jurisdiction to enter an order imposing a post-judgment award of sanctions, *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 396 (1990), the magistrate judge did not.

*Bennett v. General Caster Service of N. Gordon Co.*, 976 F.2d 995, 998 n.5 (6th Cir. 1992).

Second, district judges may make one-off designations to a magistrate judge of any matter set forth in 28 U.S.C. § 636(b). *See* LR 72.1(b). No such designation was made here. Nor would one have necessarily been appropriate. *See Homico Constr. & Dev. Co. v. Ti-Bert Sys., Inc.*, 939 F.2d 392, 394 n.1 (6th Cir. 1991) ("We note that, since the case was dismissed prior to consideration of sanctions, this was not a 'pretrial matter' and, thus, could not have been properly referred to the magistrate under section 636(b)(1)(A).").

Finally, with the consent of the parties, a magistrate judge is designated to conduct the proceedings in a civil matter and to order entry of judgment. *See* LR 72.1(c). Plaintiff has not and does not consent to such a designation. Because the Magistrate Judge was not acting pursuant to a valid district court designation, he exceeded his authority in reopening the case. *See Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 58-60 (1982).

The distinction between Article I authority and Article III authority has important structural and due process implications. As the Ninth Circuit observed, "the attributes of Article III judges, permanency in office and the right to an undiminished compensation, as are essential to the independence of the judiciary now as they were when the Constitution was framed…. A separate and independent judiciary, and the guarantees that assure it, are present constitutional necessities, not relics of antique ideas." *Pacemaker Diagnostics Clinic of America v. Instromedix*, 725 F.2d 537, 541 (9th Cir. 1984). An improper delegation of judicial authority violates Article III's case and controversy clause. *See U.S. v. Torres*, 258 F.3d 791, 796 (8th Cir. 2011). "From an institutional standpoint, allowing a magistrate judge to exercise Article III power may impugn the structural protections inherent in our tripartite system of government." *U.S. v. Lothridge*, 324 F.3d 599, 600 (8th Cir. 2003) (citing *Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 850 (1986)).

## III.   The Cases Were Not Properly Reopened

Even if the Magistrate Judge possessed Article III powers, he did not properly exercise them here. The Magistrate Judge's concern is fraud on the court, for which the appropriate course of action would be to issue an order to show cause. Plaintiff would respond, as it has successfully done in response to Mr. Cooper's repudiation in dozens of cases nationwide, by pointing out the inconsistencies in Mr. Cooper's positions, the law of copyright assignment, and Plaintiff's actual ownership of the copyright at issue in this case.

Here, it is not clear on what grounds this case is proceeding. The Magistrate Judge's June 20 order described the possibilities of proceeding under Federal Rules of Civil Procedure 60 or 11, but did not specifically identify either rule. While it is unclear whether the Magistrate Judge is proceeding under Rule 11 or Rule 60, the Magistrate Judge's use of the word "reopened" in his July 15 Orders and the absence of a show cause order issued under Rule 11 suggests that he has reopened the cases under Rule 60. Out of an abundance of caution, Plaintiff will address both Rule 60 and Rule 11.

## A.    The Cases Were Not Properly Reopened Under Rule 60

Rule 60 only allows relief from a final judgment, order or proceeding. Yet, all of the underlying cases were voluntarily dismissed pursuant to Rule 41(a)(1), "without a court order." Fed. R. Civ. P. 41(a)(1). The Magistrate Judge noted three cases—two unreported decisions from the Eighth Circuit and one decision from this District—all of which held that Rule 60 cannot be used to set aside a Rule 41 dismissal. The Magistrate Judge disagreed with these holdings, citing instead to a decision of the Florida Supreme Court. Yet, the Florida Rules of Civil Procedure are structured differently than the Federal Rules of Civil Procedure. For example, the Florida Rules of Civil Procedure allow for voluntarily dismissal at any time "before retirement of the jury." Fla. R. Civ. P. 1.420. Meanwhile, the Federal Rules contemplate a far narrower window for voluntary dismissal: any time prior to the defendant's filing of an answer or motion for summary judgment. Fed. R. Civ. P. 41(a)(1).

The more liberal dismissal rules in Florida mean that parties may have expended far more resources and conducted far more discovery at the time of a voluntary

19

dismissal—thus providing a policy justification for greater court supervision over voluntarily dismissals. Here, however, because this case is subject to the policies embodied in the Federal Rules, the decisions of federals courts from this district and this circuit should be given far more weight than those of the Florida Supreme Court. *See Cooter & Gell*, 496 U.S. at 397 ("Where state statutes and common law gave plaintiffs expansive control over their suits Rule 41(a)(1) preserved a narrow slice: It allowed a plaintiff to dismiss an action without the permission of the adverse party or the court only during the brief period before the defendant had made a significant commitment of time and money.").

Even if the Magistrate Judge possessed the authority to reopen the cases under Rule 60, he failed to follow proper procedures for doing so.  Rule 60 states that a district court may reopen a case on motion and just terms. Fed. R. Civ. P. 60(b).  While neither Plaintiff nor the Defendant moved to reopen the case, the Eighth Circuit has held that a district court may reopen a case *sua sponte*—provided that parties are afforded the due process protections of notice and an opportunity to be heard.  *See Pierson v. Dormire*, 484 F.3d 486, 492 (8th Cir. 2007). Neither notice nor an opportunity to be heard was provided here. Indeed, Plaintiff believes that the availability of notice and an opportunity to be heard would have conserved judicial resources and the resources of Plaintiff and the putative Doe Defendants.

Finally, the Magistrate Judge's decision to proceed without notice and an opportunity to be heard has resulted in proceedings that are highly ambiguous. By way of example, Rule 60 allows a district court to reopen a case upon a *finding* of fraud. But the

Magistrate Judge has indicated that the purpose of reopening the cases is to *investigate* fraud. The Magistrate Judge's reopening of the underlying cases on the basis of fraud for the purpose of investigating fraud creates an appearance that the Magistrate Judge has prejudged the issue.

### B.     Show Cause Proceedings Were not Properly Initiated Under Rule 11

As for Rule 11, a court-initiated Rule 11 proceeding is properly commenced via a show-cause order. Fed. R. Civ. P. 11(c)(3). The show-cause order must specifically describe conduct that violates Rule 11(b). *Id.* The purpose of this requirement is to prevent federal courts from ensnaring litigants in ambiguous circumstances. No show cause-order has been issued in this case. Plaintiff does not know why, for example, the Magistrate Judge has ordered Plaintiff to perform a Federal Rule of Evidence 901(a) authentication and why such an authentication has any relevance to the concerns raised by the Magistrate Judge.

[intentionally left blank]

## CONCLUSION

The Court should dismiss this case for lack of subject matter jurisdiction.


Respectfully submitted,

DATED: September 19, 2013


<u>s/ Paul Hansmeier</u>
Paul Hansmeier
Bar Number 387795
Attorney for Plaintiff
Class Justice PLLC
100 South Fifth Street, Suite 1900
Minneapolis, MN 55402
Telephone: (612) 234-5744
mail@classjustice.org