## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| AF HOLDINGS LLC, | CASE Nos. 12-cv-1445 (JNE/FLN) |
| Plaintiff, | |
| v. | Judge: Hon. Joan N. Ericksen |
| JOHN DOE, | Magistrate Judge: Hon. Franklin L. Noel |
| Defendant. | |

### MEMORANDUM IN SUPPORT OF PLAINTIFF AF HOLDINGS LLC'S MOTION TO SUPPLEMENT

Plaintiff AF Holdings LLC respectfully requests, pursuant to Federal Rule of Civil Procedure 6(b)(1)(B), leave to supplement the record with newly secured testimony that could not reasonably have been brought forth earlier.

### LEGAL STANDARD

Federal Rule of Civil Procedure 6(b)(1) provides:

> (1) *In General*. When an act may or must be done within a specified time, the court may, for good cause, extend the time:
>
> * * *
>
> (B) on motion made after the time has expired if the party failed to act because of excusable neglect.

Common practice within the Eighth Circuit and elsewhere recognizes that motions pursuant to Rule 6(1)(B) are the appropriate vehicle by which to obtain leave of court to supplement the record with later-acquired evidence. *See, e.g., Huggins v. FedEx Ground*

*Package Sys., Inc.*, 592 F.3d 853, 856-57 (8th Cir. 2010) (analyzing party's motion to supplement the summary judgment record under Fed. R. Civ. P. 6(b)(1)); *Doe v. City of Phoenix*, 2009 WL 4282275, at *13 (D. Ariz. Nov. 25, 2009) (same).

## DISCUSSION

The Court held an evidentiary hearing on September 30, 2013 (hereinafter the "Evidentiary Hearing"). (ECF No. 51.) Since then, however, Plaintiff has obtained testimony that it could not have obtained earlier: testimony from Kimberly Eckenrode. Plaintiff requests leave to supplement the record with the evidence noted above, which has come into its possession within the past four days.

### I. PRIOR TO THE EVIDENTIARY HEARING PLAINTIFF DID NOT KNOW THAT KIMBERLY ECKENRODE WAS THE PERSON WHO TEXTED ALAN COOPER

Mr. Cooper testified at the September 30, 2013, hearing and has claimed in filings nationwide that he first became aware of his association with the Plaintiff on November 22, 2012, via text message. *E.g.,* First Amended Counterclaims, *Paul Duffy v. Paul Godfread et al*, No. 1:13-cv-1569 (N.D.Ill. Sept. 16, 2013), ECF No. 36 at 8 ("On or around November 22, 2012, Cooper learned about copyright lawsuits being filed by a company called AF Holdings that happened to have a CEO named Alan Cooper.").

Prior to the Evidentiary Hearing, Mr. Cooper never publicly revealed the identity of the person who, according to him, prompted him to initiate his lawsuit against Mr. Steele, Prenda Law, Inc., Plaintiff and others for $4.6 Million dollars. There is a very simple reason why Mr. Cooper, his financial benefactors at the Electronic Frontier

Foundation[1], and his putative attorney, Paul Godfread, fought to avoid revealing Ms. Eckenrode's identity. They knew that the moment Mr. Cooper revealed Ms. Eckenrode's identity, Ms. Eckenrode would be contacted by Plaintiff to learn her side of the story.

This is exactly what happened. As Plaintiff explains below, as has been the case with respect to every one of Mr. Cooper's allegations of forgery[2], his allegation before this Court is simply false. Every time Mr. Cooper is forced to divulge facts about his repudiation, his narrative is undermined.

## II. A SUMMARY OF KIMBERLY ECKENRODE'S TESTIMONY

The lynchpin of Alan Cooper's repudiation is his claim that he first became aware of his association with Plaintiff on November 22, 2012, and took actions to address his alleged concerns forthwith. A showing[3] that Mr. Cooper was aware of his association

---

[1] The overriding mission of the EFF has been to shield the Internet from effective regulation—"defending it from the intrusion of territorial government." Jack L. Goldsmith & Tim Wu, Who Controls the Internet?: Illusions of a Borderless World 18 (2006). This mission is radical, quasi-anarchist, and intrinsically opposed to any effective enforcement of intellectual property rights. Purporting to speak on behalf of "Cyberspace," a co-founder of the EFF (who presently serves on its Board of Directors) has warned the "Governments of the Industrial World" that "[y]our legal concepts of property, expression, identity, movement, and context do not apply to us." John Perry Barlow, A Declaration of the Independence of Cyberspace (Feb. 8, 1996), available at https://projects.eff.org/~barlow/Declaration-Final.html.

[2] In papers filed nationwide, including before this Court, Mr. Cooper and his putative attorneys have accused other attorneys of forging not only his signature, but the signatures of Peter Hansmeier, Allan Mooney, Daniel Weber and "Salt Marsh". When questioned at the Evidentiary Hearing about these allegations, Mr. Cooper conceded that he never met, spoke with or otherwise knew anything about any of these individuals.

[3] Plaintiff has already provided evidence that Mr. Cooper was aware of his association with it prior to November 22, 2012. Mr. Steele testified that Mr. Cooper spoke with Mark Lutz on March 18, 2011, and authorized the use of his name on Plaintiff's documents.

3

with Plaintiff well before November 22, 2012—but took no timely action to challenge this association—would not only implicate Mr. Cooper in perjury[4], but would also fatally undermine forgery allegations, not to mention Mr. Cooper's financially-motivated lawsuit against Mr. Steele and others.

The elements of forgery include the unauthorized use of someone's name with the intent to defraud.[5] A reasonable person would be expected to take some action—however minor—to protect his or her interests within a reasonable time of being put on notice of the unauthorized use of his or her name. A "failure to repudiate previously ungranted use of the same name of the same person of [like documents]" supports a finding that Plaintiff had reasonable grounds to believe that it was authorized to use Mr. Cooper's name. *E.g., Smith v. Commonwealth*, 282 S.W.2d. 618, 619 (Ky. 1955). Perhaps recognizing this point (or advised by his attorney, Paul Godfread, of the same), Mr. Cooper has elected to tell courts nationwide that November 22, 2012, was the first date

---

Alan Cooper could not remember a single thing about that day. Both Mr. Steele and Jason Flesher testified that Alan Cooper regularly bragged about his association with "porn companies" and held himself out as a so-called "porn kingpin." Mr. Cooper did not deny doing so, but claims that he was joking.

[4] At the Evidentiary Hearing, Mr. Cooper stated repeatedly that he had no knowledge of any association with a "porn company" prior to November 2012 and that he had never previously been put on notice of any such association from friends, family, members of his community, coworkers or anyone else.

[5] For the sake of this discussion, Plaintiff will ignore, *arguendo*, that the appearance of Mr. Cooper's name on Plaintiff's assignments is purely gratuitous. The elements of copyright assignment are: (1) a writing; (2) signed by the assignor. Mr. Cooper's signature does not bear on either of these elements and thus could not plausibly be associated with intent to defraud.

he became "aware" of his association with adult companies. However, Mr. Cooper's timeline is contradicted by Ms. Eckenrode's testimony.

Ms. Eckenrode learned of Mr. Cooper's connection with adult companies in July 2012. Kimberly Eckenrode Aff. ¶ 3−5. The source of her knowledge was none other than Mr. Cooper. *Id.* During an early-July 2012 conversation with her husband, Mr. Cooper, "spoke about cases in which his signature was on various documents." *Id.* ¶ 5.

Almost a half of a year later, on November 15, 2012, Ms. Eckenrode was reading pro-piracy blog sites and ran across articles referencing the appearance of Mr. Cooper's name on the documents at issue in this case. *Id.* ¶ 6−10. That same day, Mr. Cooper happened to be talking with Ms. Eckenrode's husband about hunting, and Ms. Eckenrode's husband mentioned Ms. Eckenrode's discovery to Mr. Cooper. *Id.* ¶ 11. Mr. Cooper asked Ms. Eckenrode to text the blog post to him. *Id.* Shortly thereafter, Ms. Eckenrode sent Mr. Cooper a text message with documents in question and text from the blog article. *Id.* ¶ 10. The purpose of the text message was to ask Mr. Cooper if the documents referenced on the blogs were the ones he had referenced in Minnesota. *Id.* ¶ 13. Mr. Cooper confirmed that they were. *Id.*

**III.   THE COURT SHOULD ALLOW PLAINTIFF TO SUPPLEMENT THE RECORD WITH THE AFFIDAVIT OF KIM ECKENRODE**

Ms. Eckenrode's testimony is relevant to the case because it implicates Mr. Cooper in perjury and contradicts his repudiation. It is further relevant because it demonstrates that Mr. Cooper was aware of the appearance of his name on the exact documents in this action, thus fortifying Plaintiff's position that the appearance of Alan

Cooper's name on Plaintiff's assignments was authorized by Mr. Cooper. Plaintiff could not have obtained Ms. Eckenrode's testimony prior to the Evidentiary Hearing hearing because Mr. Cooper—for reasons that are now obvious—kept Ms. Eckenrode's identity a secret.

## CONCLUSION

Ms. Eckenrode's testimony is relevant and it directly belies the lynchpin of Mr. Cooper's repudiation narrative. Plaintiff has good cause for moving to supplement the record on this date because Mr. Cooper previously sought to conceal Ms. Eckenrode's key role in this matter. The Court should allow Plaintiff to supplement the record.

Respectfully submitted,

DATED: October 4, 2013

s/ Paul Hansmeier
Paul Hansmeier
Bar Number 387795
Attorney for Plaintiff
Class Justice PLLC
100 South Fifth Street, Suite 1900
Minneapolis, MN 55402
Telephone: (612) 234-5744
mail@classjustice.org