```
                   UNITED STATES DISTRICT COURT
                      DISTRICT OF MINNESOTA

------------------------------------------------------------
                              )
  AF Holdings, LLC,           )  File No. CV-12-1445 (JNE/FLN)
                              )  File No. CV-12-1446 (JNE/FLN)
           Plaintiff,         )  File No. CV-12-1447 (JNE/FLN)
                              )  File No. CV-12-1448 (JNE/FLN)
  vs.                         )  File No. CV-12-1449 (JNE/FLN)
                              )
  John Doe(s),                )  Minneapolis, Minnesota
                              )  September 30, 2013
           Defendant(s).      )
                              )
                              )
------------------------------------------------------------
```

BEFORE THE HONORABLE FRANKLIN L. NOEL
UNITED STATES DISTRICT COURT MAGISTRATE JUDGE

**(EXCERPTS FROM TESTIMONY OF JOHN STEELE)**

APPEARANCES

| | |
|---|---|
| For the Plaintiff: | Class Action Justice Institute |
| | PAUL R. HANSMEIER, ESQ. |
| | 40 South Seventh Street, #212-213 |
| | Minneapolis, Minnesota 55402 |
| For Witness Alan Cooper: | Godfread Law Firm |
| | PAUL A. GODFREAD, ESQ. |
| | 100 South Fifth Street, #1900 |
| | Minneapolis, Minnesota 55402 |
| Court Reporter: | LORI A. SIMPSON, RMR-CRR |
| | 300 South Fourth Street, #1005 |
| | Minneapolis, Minnesota 55415 |

Proceedings recorded by mechanical stenography; transcript produced by computer.

```
 1                        *  *  *
 2                   (Excerpt from hearing)
 3                        *  *  *
 4
 5   BY MR. HANSMEIER:
 6   Q.  Mr. Steele, how do you know what this document is?
 7   A.  Well, I'm generally familiar with assignment agreements.
 8   I'm familiar with obviously the issues raised by this
 9   assignment agreement recently in this court and other
10   courts, if that's what you're asking.
11   Q.  Do you have knowledge of whether this assignment was
12   ever registered with the U.S. Copyright Office?
13   A.  Yes, yes.  I made arrangements for it to be registered.
14   I believe that was in 2011.
15
16
17
18
19
20
21
22
23
24
25
```

1            * * *
2        **(Excerpt from hearing)**
3            * * *
4   BY MR. HANSMEIER:
5   Q.  Now, Mr. Steele, focusing specifically on the person
6   purporting to sign on behalf of the assignee, do you
7   recognize the name?
8   A.  Of course.  It's Alan Cooper.
9   Q.  Now, Mr. Steele, do you know if Mr. Cooper personally
10  signed this himself?
11  A.  No.
12  Q.  Do you believe that he personally signed it himself?
13  A.  I don't know.  I would have to see if -- I would have to
14  know more, like if he was around at that time or available.
15  Q.  Well, Mr. Steele, if Mr. Cooper did not sign the
16  document himself, how could his name have appeared on the
17  document?
18  A.  Well, it's my understanding that he had given authority
19  to Mark and his people if he wasn't available, that he could
20  sign the various documents as long as he understood what the
21  document related to as far as -- you know, for instance, my
22  understanding was he couldn't just sign a car title or
23  something.  It had to be related to specifically this
24  related -- this type of paperwork.
25  Q.  So Mr. Cooper gave his authorization to Mark Lutz for

1  the use of his name in connection with --
2  A.  Yes.
3  Q.  -- these companies?
4  A.  Absolutely.
5  Q.  And do you have any reason to believe that the use of
6  Mr. Cooper's name on this document or on the assignment for
7  "Sexual Obsession" was not authorized?
8  A.  Absolutely not.
9  Q.  And you've previously testified that you heard
10  Mr. Cooper bragging about his relationship with these
11  companies, offering people jobs.  Were there any other
12  manifestations of Mr. Cooper's knowledge of his involvement
13  with these companies?
14  A.  Well, I mean, he told -- other than telling people the
15  details of the company and various settlements and various
16  things like that, I mean, he talked about it.  Whenever we
17  would get together he would joke about it.  I know that at
18  some point he told his wife or -- I don't know if they were
19  married at the time, but the person living with him.  I
20  think her -- I don't know her last name.  Charity was her
21  first name.
22  Q.  And, Mr. Steele, did Mr. Cooper ever express any concern
23  or discomfort to you personally with respect to the use of
24  his name in connection with these companies?
25  A.  No.  I think that -- no to that question.  I mean, I

1  know that he complained once to me about the pain in the
2  butt of sometimes getting to -- you know, dealing with phone
3  calls or getting to a document or having something notarized
4  or something like that.  But I said, Well, whatever, you
5  know, your attorney says you have to do, it's for a reason.
6  Q.  That's all I have for you, Mr. Steele.
7              MR. HANSMEIER:  Thank you.
8              THE COURT:  Keep your seat.  You're not done.
9              Let me have the two assignments that you've been
10 talking about.
11             MR. HANSMEIER:  Let me get the second one here.
12             THE WITNESS:  May I get some more water, Judge?
13             THE COURT:  Sure.
14             MR. HANSMEIER:  I'll get you some water.
15             THE COURT:  These are photocopies, correct, these
16 aren't original assignments?
17             MR. HANSMEIER:  These are not the originals.
18             THE COURT:  Okay.
19                           **EXAMINATION**
20 BY THE COURT:
21 Q.  All right.  Mr. Steele, I am going to show you what your
22 lawyer showed you earlier or Mr. Hansmeier showed you
23 earlier, which I have marked as Exhibit 1.  Is that a
24 photocopy of the Copyright Assignment Agreement for the work
25 known as "Sexual Obsession"?

1  A.  Yes.
2  Q.  And that's the document that you previously looked at
3  and testified about in response to Mr. Hansmeier's
4  questions?
5  A.  Yes.
6  Q.  And that was the document that was attached as Exhibit B
7  to the complaint that was filed in Civil No. 12-1445 and
8  12-1448; is that correct?
9  A.  I have no idea.
10          THE COURT:  Okay.  Mr. Hansmeier, do you know if
11  that's the --
12          MR. HANSMEIER:  That is correct, Your Honor.
13  BY THE COURT:
14  Q.  And my understanding is you did not see Alan Cooper sign
15  that document; is that correct?
16  A.  This document?  No.
17  Q.  As I understood your testimony, you said you had an
18  understanding that Cooper had authorized Lutz to sign
19  documents on his behalf.  Was that your testimony?
20  A.  Not exactly.  I didn't have an understanding with
21  Mr. Cooper.  Mr. Cooper and Mr. Lutz had an understanding
22  and to the extent -- I don't know if it was only with --
23  Q.  Let me interrupt you.  What -- on what do you base what
24  you know or what you have testified about regarding an
25  agreement between Lutz and Cooper?

1  A.  Well, based on the two phone calls that I was present at
2  where Mr. Cooper spoke to Mr. Lutz, once on March 18th, I
3  believe, and once that was later on in the year.  It would
4  have been -- I would have to look at my records, but I
5  believe it was around November or so of the same year.
6  Q.  Those are two phone calls that you testified you only
7  heard Mr. Cooper's end of the conversation?
8  A.  Yes.
9  Q.  And did you hear Mr. Cooper give Mr. Lutz authority or
10 permission to sign his name to documents?
11 A.  Yes.
12 Q.  Tell me what he said.
13 A.  Well, to the best of my -- it's been a couple of years,
14 but he said, Well, I'm not always going to be available, I'm
15 not always around, I don't have a fax machine, things like
16 that, to that effect, I won't be -- I got the impression,
17 look, I am not going --
18 Q.  I don't want your impressions.  I want to know what you
19 heard Mr. Cooper say.  Did you hear Mr. Cooper say,
20 Mr. Lutz, you can sign my name to documents as needed?
21 A.  No.  He said, If I'm not available and it's a document
22 relating to, you know, an assignment agreement or, you know,
23 relating to these companies, go ahead and send -- you know,
24 sign on my behalf, but don't -- and he made some comment
25 about, Don't use it outside of these companies.  It was kind

1  of like a joke.  He was laughing when he said that, the
2  second part where he said, Don't use it to, you know, buy a
3  car or something.
4  Q.  Have you ever seen Mr. Lutz's signature?
5  A.  Yes.
6  Q.  Do you know whether Mr. Lutz is the person who signed
7  the Alan Cooper name on Exhibit 1?
8  A.  No, I don't know.
9  Q.  Do you know who signed Alan Cooper's name to Exhibit 1?
10 A.  No.
11 Q.  All right.
12 A.  I wasn't the attorney on any of those cases.  I wouldn't
13 have handled that.
14 Q.  Do you know if Alan Cooper had a position in AF Holdings
15 or AF Film?
16 A.  The only position I was aware of was just as like a
17 helper.  He had no, like, authority or he wasn't like the
18 CEO or president or anything.  He was just assisting Mark in
19 getting -- you know, like an entry level, you know, just
20 helping Mark, from my understanding based on what I -- based
21 on my conversations both with Mark and with Mr. Cooper.
22 Q.  Beyond the two telephone conversations about which you
23 testified?
24 A.  Well, sure.  I talked to Alan directly when we were
25 together about various matters and I certainly had spoken to

1    Mr. Lutz in 2011 about it.
2    Q.  Was AF Holdings a client of yours?
3    A.  At the very -- towards the very end of our -- yes.  I'm
4    sorry.  The short answer is yes, but I don't know if Steele
5    Hansmeier ever filed any lawsuits for them because it was at
6    the end of the firm being open.  I don't know if that makes
7    sense.  I could --
8    Q.  So it's your understanding that Alan Cooper -- let me
9    rephrase that question.  Did Alan Cooper -- was Alan Cooper
10   employed by AF Holdings?
11   A.  I don't know if he was employed officially by
12   AF Holdings.  I couldn't tell you.  I have no interest or
13   involvement or ownership with AF Holdings.
14   Q.  Do you know if he received income from AF Holdings?
15   A.  I do not know.
16   Q.  Is there such a thing as AF Films, by the way?
17   A.  I believe that was an earlier -- like a typo or
18   something, because I noticed that.  When I was preparing
19   yesterday I realized that it looks like there was a typo,
20   because it's my understanding this relates to AF Holdings
21   and I believe -- yeah, it says it in the agreement.
22   Q.  Just to be clear, then, as to Exhibit 1, is it your
23   testimony that you do not know who signed the Alan Cooper
24   name on Exhibit 1?
25   A.  Yes, Your Honor.

```
 1    Q.  I'm going to show you Exhibit 2.  Do you recognize that?
 2    A.  Yes.
 3    Q.  Is that the second assignment about which Mr. Hansmeier
 4    was asking, which is the assignment related to a work called
 5    "Popular Demand"?
 6    A.  Yes.
 7    Q.  And same questions.  Do you see the Alan Cooper
 8    signature on that document?
 9    A.  I do.
10    Q.  And do you know if Alan Cooper signed that document?
11    A.  I would guess that he did not because it doesn't look
12    like his signature.
13    Q.  And do you know who did sign the Alan Cooper signature
14    on that document?
15    A.  No.
16                              *  *  *
17                    (Excerpt from hearing concluded)
18                              *  *  *
19
20        I, Lori A. Simpson, certify that the foregoing is a
21    correct transcript from the record of proceedings in the
22    above-entitled matter.
23
24                 Certified by:  s/ Lori A. Simpson
25                                Lori A. Simpson, RMR-CRR
```